H. E. COLLINS and Joetta Collins, Surviving Parents and personal representatives of Karen Collins, Deceased, et al., Plaintiffs-Appellants,

v.

WAYNE CORPORATION, Defendant–Appellee.

No. 78–1517.

United States Court of Appeals, Fifth Circuit.

July 18, 1980.

Rehearing Denied Sept. 4, 1980.

Hal Haralson, Austin, Tex., Dale Haralson, Tucson, Ariz., for plaintiffs-appellants.

Lancaster Smith, Harvey L. Davis, Dallas, Tex., for defendant-appellee.

Before TUTTLE, AINSWORTH and SAM D. JOHNSON, Circuit Judges.

SAM D. JOHNSON, Circuit Judge:

The day after Christmas in 1972 on a narrow bridge in New Mexico a tractor trailer carrying a cargo of cattle jackknifed and penetrated through the first four rows of seats of an oncoming bus. The collision killed nineteen and injured eleven passengers on the bus. The plaintiffs-appellants in this case are four of the injured and representatives of ten of the dead. The plaintiffs sued Wayne Corporation in products liability under Sections 402A and 402B, Restatement (Second) of Torts. They alleged that Wayne defectively designed the bus so that it was not crashworthy and that Wayne misrepresented that the bus was safe for intercity trips.

The case was tried to a jury under New Mexico substantive law. The district court refused to admit the Section 402B misrepresentation issue to the jury, and the jury answered the Section 402A crashworthiness issue in favor of the defendant Wayne. Plaintiffs bring this appeal, arguing the district court erred in refusing to submit the Section 402B issue and that the district court made three evidentiary errors in the course of the trial. For the reasons discussed below, we affirm the district court's take nothing judgment in favor of Wayne.

## I

The plaintiffs were teenage members of an Austin church group that took a trip to New Mexico for a ski vacation. The group traveled in two buses, one owned by the church and the other leased by the church. Wayne Corporation designed and built the body and the interior of the leased bus. The leased vehicle was an activity bus, a front engine vehicle similar to a school bus. After traveling all day, the church group stopped for supper at a roadside restaurant in Clovis, New Mexico. The group left the restaurant around 6:30 in the evening, just as it was getting dark. They headed toward Fort Sumner, New Mexico on U.S. Highway 60–84. John Roberts drove the church's bus, and Jerry Estes drove the leased bus, following around a hundred yards behind Roberts.

U.S. Highway 60–84 passes over a bridge between Clovis and Fort Sumner. This bridge was just under 20 feet wide, while the roadway approaching the bridge was around 24 feet wide. John Roberts testified that he was traveling around 55 miles per hour as he approached the bridge, and that the leased bus was traveling at approximately the same speed. As Roberts approached the bridge, he saw a pair of headlights coming towards him in the distance. When Roberts reached the bridge, he took his foot off the accelerator and steered the left wheels of his bus towards the center line on the bridge to leave a margin of safety between the right side of his bus and the side of the bridge. He passed the headlights he had seen as he approached the bridge around 75 yards after he crossed the bridge. As he passed the headlights, Roberts realized that they belonged to a tractor trailer rig. He then looked in his rearview mirror to see how the tractor trailer and the leased bus would pass on the bridge. The leased bus never made it across the bridge. The tractor trailer, according to Roberts's testimony, scraped the side of the bridge and veered out across the center line. Roberts saw the lights go out on the leased bus and realized that the two vehicles had collided.

Roberts then stopped his bus as fast as he could. He told his young passengers to steel themselves so they could go back and help their injured friends and relatives on the leased bus. As the rescue party approached the wreckage, they passed two corpses on the embankment at the side of the leased bus. The rescue party went into the wrecked bus through the rear emergency door. The testimony on the condition of the interior of the wrecked bus conflicts. Those in the rescue party from the church bus testified that almost the entire contents of the bus—people, seats, and luggage—were crammed forward between the front third and the front half of the bus. Those in the rescue party testified that all the seats in the bus except for the rearmost two or three seats had broken completely free from their anchorages to the floor or had bent forward substantially. The first witness called by Wayne was a doctor who happened by the bridge just after the accident. He testified that he examined the survivors that the rescue party had taken out of the wrecked bus and that he then got into the wrecked bus to examine the dead who had not yet been taken off. He said that the seats in the bus were intact. He said most of the dead people were "sitting upright in a surprisingly normal position" in their seats in the front half of the bus.

The tractor trailer involved in this accident was carrying a full load of cattle. It weighed around 45,000 pounds, over twice the weight of the leased bus. The testimony was undisputed that the trailer, not the tractor, came over the engine and through the front windshield of the bus. The trailer dislodged the bus body from its chassis and actually compressed it. The two little girls whose bodies the rescue party found on the embankment as they approached the wrecked bus had been sitting in the front row of the bus. Apparently, these bodies were ejected through the bus's windshield before the trailer sealed it off. The best explanation for the ejection is that the bus first collided with the rear wheels of the tractor. This impact slowed the bus drastically and dislodged the trailer. As the trailer approached the bus, the two girls flew through the windshield.

Wayne constructed the bus seats by screwing bottom and back cushions onto a frame made from unpadded metal tubes. Wayne fastened the seats to the bus floor with self-tapping sheet metal screws. Only one thread in each screw gripped the sheet metal floor of the bus. Plaintiffs claimed that Wayne's design of the bus was defective because of: (1) faulty attachment of the seats to the floor; (2) lack of a padded, high back seat to contain and cushion passengers in a collision; and (3) defective seat leg wells. Plaintiffs' experts testified that more of the bus passengers could have survived the collision with less severe injuries had the bus been equipped with state of the art seats at the time of manufacture.

Wayne argued at trial that the collision was so severe that no matter how the bus was designed, the plaintiffs would have suffered the same injuries. Accordingly, much of the testimony at trial centered on determining the speeds of the bus and the tractor trailer before the accident. The plaintiffs tried to show that the bus and the tractor trailer were traveling only at moderate speeds and that more of the passengers could have survived the collision or suffered less severe injuries had the bus and its seats been better designed to withstand a crash. The plaintiffs' primary accident reconstruction expert was Derwyn Severy. He testified that based on his analysis the bus was traveling between 12 and 25 miles per hour at the time of impact and that the tractor trailer was traveling between 32 and 41 miles per hour. Plaintiffs also introduced the testimony of a National Transportation Safety Board engineer who calculated the bus's speed at impact at between 30 and 41 miles per hour and the tractor trailer speed at a figure between 45 and 49 miles per hour. The accident reconstruction done by Wayne's experts showed that the accident was more severe than the plaintiffs' testimony indicated. Wayne's expert testified the bus was traveling between 50 and 55 miles per hour at the moment of impact and that the tractor trailer was traveling between 45 and 50 miles per hour. Plaintiffs offered testimony that the seats in the bus and their attachment to the floor made the bus uncrashworthy and a defective product. Predictably enough, Wayne offered directly conflicting testimony. The jury credited the testimony of Wayne's experts.

## II

Plaintiffs first claim that the district court committed reversible error in refusing to allow the deposition testimony of George Greene into evidence as an admission of the defendant Wayne. The plaintiffs submitted an interrogatory to Wayne asking it to identify each person it had retained "as an expert in the field of automobile collision investigation" to analyze or investigate any aspect of the accident. Wayne's response indicated it hired Greene two days after the accident. Wayne also supplied the plaintiffs with the Report of Investigation prepared by Greene. Later, Wayne made Greene available to the plaintiffs, and the plaintiffs took his deposition. Shortly before trial, Wayne moved in limine to exclude Greene's testimony on the ground that Greene was a consultant whose opinions were not discoverable under Rule 26 of the Federal Rules of Civil Procedure. Plaintiffs responded by arguing that Greene's deposition was admissible under Rule 801(d)(2)(C) of the Federal Rules of Evidence as an admission of a party opponent. The district court took the motions and briefs filed by the plaintiffs and Wayne under advisement and withheld any ruling on the admissibility of Greene's deposition testimony until plaintiffs prepared to offer it as part of their trial evidence. The district court overruled the defendant's motion in limine to exclude the testimony, but it also overruled plaintiff's motion to have Greene's deposition introduced as an admission of an opponent. The district court held that the plaintiffs could offer Greene's deposition into evidence, but that they could not make any mention to the jury of the fact that Greene was employed by Wayne. Thus, the district court did not exclude Greene's deposition; it merely directed the plaintiffs not to attribute Greene's testimony to Wayne as an admission or otherwise.

After the district court's ruling, the plaintiff's decided not to offer Greene's deposition into evidence. At argument before this Court, plaintiff's counsel explained that Greene's deposition would have helped their case in two ways if it were admitted as an admission of Wayne. First, Greene's testimony on the speed of the bus and the tractor trailer impact was fairly close to the estimates of the plaintiff's expert, Derwyn Severy. Severy had testified that the bus was traveling between 12 and 25 miles per hour and that the truck was traveling between 32 and 41 miles per hour. In his deposition, Greene estimated the bus was traveling 30 miles per hour and the tractor trailer was traveling at 42 miles per hour.[1] Second, plaintiffs' counsel wanted to use Greene's deposition as an admission because Greene acknowledged that Derwyn Severy, the plaintiffs' expert, was perhaps the foremost authority in the country in the field of bus design. Plaintiffs' counsel thought that this testimony would not help the plaintiffs' case if it could not be attributed to Wayne. Also, Greene testified in his deposition that he thought the bus was crashworthy. This may have had some influence on plaintiffs' counsel's decision not to offer Greene's testimony when the trial court refused to allow plaintiffs to attribute the testimony to an expert employed by Wayne.

 Wayne contends that the plaintiffs failed to preserve the error, if any, of the district court in limiting the use of Greene's deposition testimony. Wayne points out that the plaintiffs made no offer of proof of Greene's deposition testimony and that the deposition was not filed in the district court either before or after trial. Rule 103(a)(2) of the Federal Rules of Evidence provides that, "Error may not be predicated upon a ruling which . . . excludes evidence unless . . . the substance of the evidence was made known to

the court by offer or was apparent from the context within which questions were asked." The function of an offer of proof is to inform the court what counsel expects to show by the excluded evidence. 1 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 103[03] (1979). Here, the district court was fully aware of what the plaintiffs intended to show with Greene's deposition.[2] Wayne quoted excerpts from Greene's deposition in their motion in limine to exclude the deposition, and the plaintiffs also quoted the deposition in their response to defendant's motion in limine. After trial, the plaintiffs moved to supplement the record on appeal with Greene's deposition. In allowing Greene's deposition to be included in the record, the district court noted that it reviewed parts of the deposition through the excerpts in the parties' pre-trial motions and briefs in ruling on its admissibility. Plaintiffs preserved error, if any, in the district court's ruling on the Greene deposition by making the substance of the deposition known to the district court.

The district court erred in not allowing the plaintiffs to offer Greene's deposition into evidence as an admission of Wayne. Wayne stated in its response to the plaintiffs' interrogatory that it had employed Greene as an expert to investigate and analyze the bus accident. Wayne also furnished a copy of Greene's accident analysis to the plaintiffs.

*United States v. Lykes Brothers Steamship Co.*, 432 F.2d 1076 (5th Cir. 1970), presented a similar situation. There, the Government sued Lykes for damages incurred when Lykes delivered several shipments of bagged wheat flour and corn meal in a wet and damaged condition. The Government relied on documentary evidence to show an essential part of its case: that Lykes discharged the cargo in a dam-

---

1. Greene based his estimate of the speed of the bus and the tractor trailer on three factors: the damage to the vehicles; the fact that the bus's speedometer was stuck at 30 miles per hour; and a mathematical analysis that could determine the speed of the tractor trailer, given the speed of the bus.

2. As discussed above, the district court order regarding Greene's deposition limited plaintiffs' use of that deposition without excluding it. For the purpose of determining whether the plaintiffs preserved error under Rule 103, Fed. Rule Evid., however, we treat the district court's ruling as one excluding evidence.

aged condition. The district court held that two reports prepared by an agent of Lykes were inadmissible because the agents' authority allowed them only to report to their principal on the condition of the cargo. This Court reversed, holding that the reports by Lykes's agents were admissible as an admission of Lykes. In this case, Greene was Wayne's agent as Wayne employed Greene to investigate and analyze the bus accident. Greene's report on his investigation and his deposition testimony in which he explained his analysis and investigation was an admission of Wayne.

Another case supporting the result we reach here, *Brown & Root, Inc. v. American Home Assurance Co.*, 353 F.2d 113 (5th Cir. 1965), *cert. denied*, 384 U.S. 943, 86 S.Ct. 1465, 16 L.Ed.2d 541 (1966) began with a tug pushing a barge loaded with drilling mud from Brownsville to Corpus Christi on the Intercoastal Canal. Along its journey, the barge went aground on or near the channel bank. When it went aground, the barge listed, and most of its cargo slid into the canal. The cargo underwriter sued the tug for negligent towage to recover the claims it paid to the cargo owners. The tug set up a defense that the barge had struck an unmarked, unknown shoal within the channel. In support of this defense, the tug introduced a report prepared by a marine surveyor who the cargo underwriter had retained to investigate the casualty and to report his conclusions. This Court held that, "Without a doubt the actions and reports of the Surveyor . . ., made by one whose job was to investigate and *report*, constituted admissions to prove the truth of the declarations made." 353 F.2d at 116 (emphasis original; footnote omitted). Wayne hired Greene to investigate the bus accident and to report his conclusions. In giving his deposition he was performing the function that Wayne had em-

ployed him to perform. His deposition, therefore, was an admission of Wayne. Greene's deposition testimony was not, of course, a binding judicial admission, and had the district court admitted Greene's deposition as an admission Wayne would have had an opportunity to explain why some of Greene's conclusions were not consistent with Wayne's position at trial.[3]

■ Having concluded that the district court erred in refusing to allow the plaintiffs to offer Greene's deposition as an admission of Wayne, we must determine whether this error was harmless. We hold that it was. We must decide whether the district court's error was "really harmful to the complaining party." *Tugwell v. A. F. Klaveness & Co.*, 320 F.2d 866, 868 (5th Cir. 1963), *cert. denied*, 376 U.S. 951, 84 S.Ct. 967, 11 L.Ed.2d 970 (1964). Here, the district court's limitation on plaintiff's use of the Greene deposition was not really harmful. As stated above, plaintiffs contended at oral argument before this Court that the use of this deposition *as an admission of Wayne* was crucial to their case because it established two points. First, that the severity of the accident was in line with the analysis by plaintiffs' chief expert, Derwyn Severy. Second, that Greene acknowledged Severy's expertise and national reputation as an authority on bus design.

The erroneous exclusion of evidence is frequently harmless when the excluded evidence bears only on facts already established by other evidence in the record. *11 C. Wright & A. Miller, Federal Practice and Procedure* § 2885 (1973). *See Miley v. Delta Marine Drilling Co.*, 473 F.2d 856, 858 (5th Cir.), *cert. denied*, 414 U.S. 871, 94 S.Ct. 93, 38 L.Ed.2d 89 (1973) (holding that the trial court's refusal to qualify a witness as an expert was harmless error as two other witnesses had given the same testimony

---

**3.** Wayne stresses that Greene's analysis and investigation at the time of the deposition was still incomplete. Wayne could have offered this evidence to explain why Greene's deposition testimony differed from its position at trial. This fact does not bear on whether Greene's deposition was an admission. Wayne has also stressed that Greene was employed not as an expert, but as a consultant whose opinion is not discoverable. Finding no federal authority for a distinction between a consultant and an expert we reject this distinction. Furthermore, we note that Wayne's answers to the plaintiffs' interrogatories admitted that Greene was employed as an expert and made no mention of his status as a consultant.

that the rejected expert would have given). In this case, as in *Miley*, the excluded testimony was cumulative of other testimony already in the record. Plaintiffs had introduced the accident reconstruction testimony of an expert from the National Transportation Safety Board who had investigated the accident and reached conclusions about the speeds of the bus and the truck that were quite close to the conclusions reached by Greene.[4] Furthermore, the National Transportation Safety Board expert was neutral, and his testimony bolstered the conclusions of the plaintiffs' expert, Severy, just as Greene's would have. Plaintiffs also assert that Greene's deposition testimony was crucial to their case because Greene acknowledged that Severy was a leading authority in bus crash reconstruction. This evidence, however, had already been established by the testimony of Wayne's chief engineer, Robert Kurre. Kurre testified that Severy was nationally recognized in the field of bus crash testing and bus design.

Greene's deposition testimony was cumulative of other evidence already in the case. The trial court erred in limiting plaintiffs' use of Greene's deposition testimony, but this error was harmless.

### III

▮ Plaintiffs claim the district court committed reversible error in allowing Wayne to cross-examine their chief expert, Derwyn Severy, about the fees he had earned for testifying in prior cases and about allegedly inconsistent statements in prior cases. Plaintiffs did not object at trial to Wayne's cross-examination of Severy about fees earned in prior cases, and they therefore failed to preserve error in that cross-examination. Furthermore, cross-examination of an expert witness regarding fees earned in prior cases is not improper. Plaintiffs did object at trial to Wayne's cross-examination of Severy regarding allegedly inconsistent statements in prior cases, but the district court properly allowed this cross-examination.

Plaintiffs moved in limine to prevent Wayne from cross-examining any of the witnesses about fees those witnesses charged in prior litigation. The district court denied the plaintiffs' motion. Wayne's counsel began his cross-examination of Severy with a leading question that asserted Severy had testified in the same courtroom for Volkswagen three years earlier in 1974. Counsel then brought out that the plaintiffs were paying Severy $95 an hour for his testimony, and that Severy had been testifying in accident cases for 20 years. Based on earlier deposition testimony that he worked around 12 hours a day, six days a week, counsel asked whether Severy earned $343,480 per year for testifying. Severy fended this question off by explaining that he was not paid for the time he spent doing research, as opposed to testifying. Plaintiffs' counsel failed to object to this line of questioning. Severy then went on to explain that he was the sole stockholder of a corporation, and that the fees for his testimony were paid to the corporation, not directly to him. The corporation paid the administrative expenses and the salaries of secretarial help. Severy indicated that at least two other professional witnesses had an arrangement with his corporation. Under this arrangement, these witnesses would charge a client a set amount per hour for their testimony, $55 or $65 per hour, and the corporation would receive 38% of the amount of those charges. Wayne's counsel then asked whether the corporation had charged Volkswagen $344,-834 for testimony given in 1974. Severy responded that he did not know whether or not the corporation had received that amount. When Wayne's counsel asked Severy about his income tax returns for 1974, plaintiffs' counsel finally objected. The objection was, however, quite limited. Plaintiffs' counsel only stated that if Wayne wanted Severy's tax record the proper

---

4. The National Transportation Safety Board expert testified that at the moment of impact the bus was traveling between 30 and 41 miles per hour and that the tractor trailer was traveling between 45 and 49 miles per hour. Greene stated in his deposition that the bus was traveling 30 miles per hour and the tractor trailer was traveling 42 miles per hour.

method for getting access to them would be a motion to produce. The court sustained the objection and directed Wayne's counsel to move on to something else. Thirty pages later in the transcript of Severy's trial testimony, Wayne's counsel asked Severy whether he had received $244,000 from Volkswagen in 1974. Severy denied receiving that sum, and the court again ordered Wayne's counsel to move on.

■ Plaintiffs' counsel never objected to cross-examination of Severy about fees he had earned in prior cases. Plaintiffs therefore cannot predicate error on this cross-examination. Fed.R.Evid. 103(a)(1). The overruling of a motion in limine is not reversible error; only a proper objection at trial can preserve error for appellate review. See Annot., 63 A.L.R.3d 311, 333 (1975) and cases cited therein. Motions in limine are frequently made in the abstract and in anticipation of some hypothetical circumstance that may not develop at trial. When a party files numerous motions in limine, the trial court may not pay close attention to each one, believing that many of them are purely hypothetical. Thus, a party whose motion in limine has been overruled must object when the error he sought to prevent with his motion is about to occur at trial. This will give the trial court an opportunity to reconsider the grounds of the motion in light of the actual—instead of hypothetical—circumstances at trial.

Alternatively, we hold that cross-examination of an expert about fees earned in prior cases is not improper. The parties have not cited and our research has not uncovered any federal cases on this point. Cases from the state courts are split. Texas allows cross-examination of an expert witness about payments that expert has received for testifying in prior lawsuits. *Russell v. Young,* 452 S.W.2d 434 (Tex. 1970). Pennsylvania does not. *Zamsky v. Public Parking Authority,* 378 Pa. 38, 105 A.2d 335 (1954).

No one questions that cross-examination to show the bias of a witness or his interest in a case is entirely proper. Impeachment of witnesses through a showing of bias or interest aids the jury in its difficult task of determining facts when it is faced with contradictory assertions by witnesses on both sides of the case. *See generally* McCormick on Evidence § 33 (1972). A pecuniary interest in the outcome of a case may, of course, bias a witness. *Id.* A showing of a pattern of compensation in past cases raises an inference of the possibility that the witness has slanted his testimony in those cases so he would be hired to testify in future cases. The trial court did not err in allowing Wayne to cross-examine Severy about compensation he had received for Volkswagen.[5]

Plaintiffs also contend that the trial court erred in allowing Wayne to impeach Severy by cross-examining him about prior statements he had made when testifying for Volkswagen. Plaintiffs promptly objected to cross-examination regarding Severy's statements when he was testifying for Volkswagen because those statements had nothing to do with bus design or crashworthiness. The district court overruled this objection, but plaintiffs making the objection preserved error. Fed.R.Evid. 103(a)(1).

Severy testified on direct that the bus seats designed by Wayne were defective because they would pull out of the floor in a static test when a force of 1,420 pounds was applied to them. On cross-examination, Wayne's counsel brought out that Severy had testified for Volkswagen that their passenger car seats were not defective even though the adjustable backrests on those seats would yield to a fully reclined position when a force of around 600 to 800 pounds was applied to them. Plaintiffs acknowledged that Wayne could have impeached

---

5. This Court does not suggest that Mr. Severy's testimony has ever been influenced by the compensation he has received. The Court's close analysis of the transcript reveals Mr. Severy to be an able, dedicated engineer. Furthermore, we recognize that professional expert witnesses often furnish testimony that is essential to the truth seeking trial process. Nonetheless, ability and dedication cannot insulate anyone from the suggestions of bias that a cross-examiner brings out when he plays his role in a trial.

Severy with any prior inconsistent statement. "If a witness, such as an expert, testifies in terms of opinion, of course all courts will permit impeachment by showing a previous expression by the witness of an inconsistent opinion." McCormick on Evidence § 35 (footnote omitted). Plaintiffs contend, however, that Severy's testimony about backrest failures in Volkswagen adjustable passenger seats was on an entirely different subject from, and therefore necessarily not inconsistent with, his testimony in the instant case about failures in the anchorage of a fixed bus seat. Basically, we interpret plaintiffs' contention as stating that Severy's prior Volkswagen testimony was not relevant to his credibility in the instant case.

◼ Strict rules of relevancy are relaxed on cross-examination and the trial court has wide discretion to determine whether prior, possibly inconsistent statements of an expert witness are relevant to that witness's credibility. McCormick on Evidence § 36; *Longenecker v. General Motors Corp.*, 594 F.2d 1283, 1286 (9th Cir. 1979). In *Longenecker*, the plaintiff claimed that a faulty engine mount on a Chevrolet Impala caused the accident that injured him. The defendant's expert witness testified that the engine mounts did not cause the accident. Over defendant's objection, the trial court admitted a letter that the defendant's expert had written stating that faulty engine mounts in another type of General Motors car with a different engine were the cause of an accident. The Ninth Circuit held that the trial court did not abuse its discretion in admitting the impeaching letter.

◼ In this case, the trial court was within its discretion in allowing Wayne's counsel to cross-examine Severy about his prior statements regarding backrest failures in the Volkswagen adjustable passenger seats. Those passenger seats, we can assume, were quite different from the bus seats involved in the instant case. That fact alone does not eliminate the possible inconsistency in Severy's testimony that the Wayne bus seats were defective and his prior testimony that the Volkswagen seats were not defec-

tive. Plaintiffs failed to rehabilitate Severy at trial by having him explain why his opinions were not inconsistent, and they have failed to offer this Court any refutation of the possible inconsistency beyond a blanket assertion that the Wayne seats and the Volkswagen seats were different. Effective cross-examination is not a basis for reversing a jury verdict.

### IV

◼ Plaintiffs' final evidentiary point is that the district court committed reversible error in allowing testimony that the deaths and injuries of the bus passengers were the result of the wrongful negligent conduct of the third persons, not parties to the case. Before trial, the district court granted plaintiffs' motion in limine to exclude such testimony. The court explained during jury selection, however, that, "Defendant claims that the deaths and injuries are entirely attributable to the negligence of third parties. Namely the drivers of the bus and the State of New Mexico, which constructed and caused to be used the narrow bridge." Plaintiffs did not object to this statement by the trial court. Wayne questioned the plaintiffs' expert Severy about whether he thought the driver of the truck caused the injuries to the bus passengers, and Wayne read deposition testimony of an ambulance driver about prior crashes at the bridge. Plaintiffs never objected to any of Wayne's offers of testimony in violation of the motion in limine. As discussed above, an objection is required to preserve error in the admission of testimony or the allowance of cross-examination even when a party has unsuccessfully moved in limine to suppress that testimony or cross-examination. Similarly, objection is required to preserve error when an opponent, or the court itself, violates a motion in limine that was granted. This rule is necessary to conserve judicial resources. Had plaintiffs' counsel promptly objected to the violations of the motion in limine in this case, the trial court could have either avoided the violations or given an instruction to cure any harm suffered by the plaintiffs. The courts cannot adopt a

rule that would permit counsel to sit silently when an error is committed at trial with the hope that they will get a new trial because of that error if they lose.

 Furthermore, the admission of evidence regarding the fault of third persons not party to products liability suit may be harmless error. In *Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir. 1978), the plaintiff's decedent was in a Ford Galaxy 500 when he was struck from behind by a faster moving vehicle driven by Benjamin Wilson. The impact ruptured the Ford's fuel tank and caused a fire that engulfed the car and burned the decedent. The decedent's widow sued Ford, alleging that Ford's negligent design of the fuel tank caused the death of her husband. The jury returned a verdict for Ford, and this Court held that the trial court erroneously admitted into evidence over plaintiff's objection Wilson's guilty plea to charges of involuntary manslaughter. This Court went on to state that error alone did not require reversal. We noted that the plaintiff could have argued to the jury that Wilson's guilt did not absolve Ford of liability for negligent design of the fuel tank. In the instant case, the plaintiffs could have argued to the jury that the fault of the New Mexico Highway Department and the tractor trailer driver did not absolve Wayne of liability for negligent design of the bus. Even if plaintiffs had objected to the admission of evidence regarding the fault of third parties, the admission of that evidence would not have been reversible error.[6]

## V

 The district court refused to submit plaintiffs' proposed instruction under which the jury could have found Wayne liable under Section 402B of the Restatement 2d of Torts. That section provides that one who sells chattels and "makes to the public a misrepresentation of a material fact con-

cerning the character or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation . . . ." New Mexico substantive law governed the trial of this case, and New Mexico has not specifically adopted Section 402B. We find that the plaintiffs failed to produce evidence sufficient to hold Wayne liable under Section 402B and thereby avoid the difficult task of determining under *Erie* and its progeny, whether the New Mexico Supreme Court would adopt 402B on the facts of this case. *See Hoffman v. A. B. Chance Co.*, 346 F.Supp. 991, 992–93 (M.D.Pa.1972).

The only evidence of misrepresentation by Wayne was in a 20 page full color Wayne sales brochure entitled, "Look Behind the Name." Plaintiffs claim that this brochure misrepresented the quality of the bus involved in the accident as fit for intercity travel when it stated that

> Handsome Wayne Transit School Buses are outstanding for daily route service on long, heavy populated routes and for class trips to educational points of interest. Special exterior paint designs further enhance these buses for prestige use by teams, bands, glee clubs and other extracurricular organizations, as well as for adult charter service.

Section 402B does not create liability for puffing. It does not apply to loose, general praise of the product. Restatement (Second) of Torts § 402B comment g (1965). The above-quoted statements from the Wayne sales brochure are nothing more than puffing. *Compare Hoffman v. A. B. Chance Co.*, 339 F.Supp. 1385, 1388 (M.D.Pa. 1972) (holding statement by manufacturer that a product "offered unprecedented safety" was puffing insufficient to serve as the basis for a cause of action under Section 402B) *with Hoffman v. A. B. Chance Co.*,

---

**6.** This Court recognizes that the combination of several errors may require reversal even though each error by itself would have been harmless. *See generally* 1 J. Weinstein & M. Berger, *supra* at ¶ 103[06]. Even when taken together, the errors in this case do not warrant reversal. This was a long, complicated trial and there were bound to be some evidentiary errors. We cannot find any basis for concluding that the jury might have reached a different result had there been no errors.

346 F.Supp. at 992 (holding that representation that "it was unnecessary to have another person in the cab of the vehicle while the equipment was being operated" was sufficient to serve as the basis for a Section 402B cause of action).

The Wayne sales brochure also states that, "Wayne buses exceed state and national school bus safety standards . . ." This statement is not mere puffing. It cannot serve as a basis for a Section 402B cause of action, however, because the bus involved in this case was not a school bus. It was an activity bus, owned by a private company that was in the business of operating shuttle buses and leasing buses to private groups. We read the entire Wayne sales brochure as applying only to school buses. Almost every page of the brochure has a picture of a school bus. The brochure has no pictures of activity buses. Plaintiffs failed to introduce any evidence that Wayne made a material misrepresentation about the activity buses it manufactured. The district court, accordingly, properly refused to submit to the jury plaintiffs' requested misrepresentation instruction.

## VI

The accident that gave rise to this case was tragic. Scores of people will never forget being called to their church on the night after Christmas in 1972. They will not forget waiting for the others who were called to arrive, for the church doors to be locked, and for their minister to tell them of the terrible accident suffered by their children. Almost five years later, many of those who had suffered in or from the accident gathered at another building in Austin, the Federal Courthouse, to relive the trauma they had gone through. Officers and employees of the Wayne Corporation came to Austin from Indiana for the trial. They faced a local jury and potentially staggering liability for injuries from an accident that no one even contended was caused by the bus they manufactured.

The trial lasted thirteen days, not including breaks for weekends and the Thanksgiving Holiday. Both sides presented their evidence. There were errors made in the course of the trial, but there are errors in every trial. Both sides then argued the case. In concluding his argument, Wayne's counsel implored the jury to lay aside their emotion and sympathy and to try the case solely on the facts. He asked the jury to look forward to the time after trial when they could sit with their friends and talk about the case and say, "When it came my time in the administration of justice, I followed the court's charge. It was hard, but I did my duty." Plaintiffs' counsel then made his closing argument. He told the jury that they had to become the conscience of the community. He told the jury that their job was to set a standard for the products made by Wayne. He told the jury that they had an opportunity to tell Wayne that it could not excuse itself for not making safe products. The court charged the jury, and it returned the next morning with its verdict. The jury found for Wayne against each of the four injured plaintiffs and the ten sets of survivors. The district court accepted the jury's verdict and entered judgment on it. We also accept the jury's verdict and affirm the district court.

AFFIRMED.