**Paulino Izaguirre ROJAS, Plaintiff-Appellant,**

**v.**

**Robert RICHARDSON, Kenneth McGee and M and R Cattle Company, a partnership, Defendants-Appellees.**

**No. 82–2149**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

April 21, 1983.
Rehearing Granted Aug. 29, 1983.

Gregory L. Ceshker, Julianne May Young, Dallas, Tex., for plaintiff-appellant.

Richard Grainger, Tyler, Tex., for defendants-appellees.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge.

Paulino Izaguirre Rojas worked as a ranch hand for Robert Richardson, a partner in the M and R Cattle Company along with Kenneth McGee. On December 4, 1980, Rojas met with Richardson and another employee for the day's work. Richardson furnished Rojas with a horse named Jet. Rojas had ridden this horse a few times before. When Rojas mounted Jet, the horse began bucking and running. Rojas finally was thrown from the horse and severely injured. Rojas later filed this suit in federal district court against Richardson, McGee, and the partnership, invoking diversity jurisdiction, 28 U.S.C. § 1332(a)(2). Rojas claimed negligence in furnishing an inadequately broken horse with a dangerous bridle. In addition, he claimed a failure to give reasonable warnings regarding the dangers of the horse or its bridle. In the alternative, he sought payment of his medical expenses under the terms of his oral employment contract. The defendants denied these claims and countered with a defense of contributory negligence. After a full trial, the jury returned a verdict for the defendants.

Rojas brings a timely appeal, primarily seeking a new trial based on irreparable jury prejudice from the defense counsel's reference during closing argument to Rojas as an illegal alien. He also claims as error certain evidentiary rulings and limits on cross-examination. We reverse and remand on the basis of defense counsel's incendiary remarks to the jury during closing argument.

I. Objections to Closing Argument

Rojas' major argument is that defense counsel tainted the propriety of the trial by reference to Rojas as an illegal alien. Rojas claims that identification as an illegal alien was unsupported in the evidence, completely irrelevant to the issues before the court, and inherently prejudicial to a full and fair hearing on the merits. Rojas asserts the emotional weight of the remark by pointing out that the public education for undocumented aliens case, *Doe v. Plyler,* 628 F.2d 448 (5th Cir.1980), *aff'd,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982), dealt with the school district for Tyler, Texas, where the trial in this case was held. *Doe v. Plyler* was pending in the United States Supreme Court when the trial was held. Rojas urges that the improper argument was directed especially toward the jury foreman, an employee of the Tyler Independent School District. He urges that any general prejudice of the jurors toward undocumented workers likely would have operated against him in this civil trial.

The employers have no serious counter to the substance of these charges. Rather, they claim that this issue was not preserved for appeal because no objection was made in the district court to use of the term "illegal alien."

We have checked the trial record carefully, and indeed find no objection during trial to use of the term "illegal alien." Rojas directs our attention to his request for a motion in limine made before trial. Paragraphs 2 and 3 of this motion in limine would have barred the use of testimony concerning the status of Rojas as a "wetback" or illegal alien, and the presentation of any evidence that the witnesses in the case ever employed undocumented workers.[1] These two paragraphs of the motion in limine were denied.[2] Rojas claims, first, that the denial of the motion in limine is an appealable error in its own right, and, second, that the request for the motion in limine should be sufficient to preserve the error regarding defense counsel's use of the term illegal alien.

First, we conclude that the denial of the motion in limine is not a sufficient ground for reversal in this case. Denial of a motion in limine rarely imposes a serious hardship on the requesting party, since the affected party can make a subsequent objection if the evidence is ever offered at trial. That later objection is the better time to evaluate the possible exclusion of testimony because it is at that time that the claims of prejudice and irrelevance move out of the abstract context of a motion in limine into the real world of an actual speaker and a specific statement. In the case before us, there is no particular injury claimed from the denial of the motion in limine other than that connected with the admission of later statements referring to Rojas as an illegal alien. We find the issue better framed by the "actual—instead of hypothetical—circumstances at trial." *Collins v. Wayne Corp.,* 621 F.2d 777, 784 (5th Cir.1980). Consequently, we look to the

1. The pertinent part of plaintiff's first motion in limine provided:

II.

Whether the Plaintiff was or ever has been in the United States illegally, was a "wetback" or has ever been in the United States without proper authorization and/or documentation or the mode or manner in which he physically came into the United States prior to his injuries made the basis of this suit.

III.

Whether any witness employs or has employed workers who are illegal aliens, "wetbacks" or are in the United States illegally or without proper authorization and/or documentation.

2. All other portions of the plaintiff's motion in limine, and all parts of the defendants' motion in limine, were granted. These portions of the motions are not at issue in this case.

error, if any, committed when the actual statements regarding alienage were admitted, rather than when the blanket hypothetical requests to limit such statements were denied during pretrial motions.

Rojas urges that the motion in limine itself was a sufficient presentation of his concerns to the district court to preserve the assignment of error on appeal. This Circuit, however, has held otherwise. In *Collins v. Wayne Corp., supra,* the defendant corporation in a products liability action had cross-examined the plaintiffs' expert witness regarding his fees in prior cases. No objection was made at trial, although the plaintiffs had tried to suppress such testimony through a pretrial motion in limine. Judge Johnson stated the general rule that an overruled motion in limine does not preserve error on appeal.

> Plaintiffs' counsel never objected to cross-examination of Severy about fees he had earned in prior cases. Plaintiffs therefore cannot predicate error on this cross-examination. Fed.R.Evid. 103(a)(1). The overruling of a motion in limine is not reversible error; only a proper objection at trial can preserve error for appellate review. *See* Annot., 63 A.L.R.3d 311, 333 (1975) and cases cited therein. Motions in limine are frequently made in the abstract and in anticipation of some hypothetical circumstance that may not develop at trial. When a party files numerous motions in limine, the trial court may not pay close attention to each one, believing that many of them are purely hypothetical. Thus, a party whose motion in limine has been overruled must object when the error he sought to prevent with his motion is about to occur at trial. This will give the trial court an opportunity to reconsider the grounds of the motion in light of the actual—instead of hypothetical—circumstances at trial.

*Id.* at 784.

The general rule is that where "no good reason is shown for the failure of appellant's trial counsel to object to the admission of evidence, the objection is deemed to have been waived." *Puryear v. United States,* 378 F.2d 29, 30 (5th Cir. 1967). *See also Jenkins v. General Motors Corp.,* 446 F.2d 377 (5th Cir.1971), *cert. denied,* 405 U.S. 922, 92 S.Ct. 959, 30 L.Ed.2d 793 (1972) (a timely objection generally is required to preserve appealability); *United States v. Rayborn,* 310 F.2d 339 (6th Cir. 1962), *cert. denied,* 373 U.S. 952, 83 S.Ct. 1683, 10 L.Ed.2d 707 (1963) (*accord*) (prosecutor's statements at trial).

Rojas relies upon the case of *Reyes v. Missouri Pac. R.R. Co.,* 589 F.2d 791 (5th Cir.1979) in an attempt to carve a broad exception out of *Collins.* In *Reyes,* the plaintiff brought negligence claims against a railroad after he was run over by a train. The railroad claimed that Reyes was drunk on the night in question and had fallen asleep on the tracks. During pretrial proceedings, Reyes made a motion in limine to exclude evidence relating to four prior convictions for public intoxication. The motion was denied. *Reyes* then presented that evidence himself to the jury and later appealed the use of that evidence at trial.

This Circuit allowed such an appeal, rejecting the railroad's suggestion that *Reyes* had waived error by volunteering the information rather than objecting at trial. "After the trial court refused to grant Reyes' motion *in limine* to exclude the evidence, he had no choice but to elicit this information on direct examination in an effort to ameliorate its prejudicial effect. Error was sufficiently preserved by making the motion *in limine.* *See* Fed.R.Evid. 103, 28 U.S.C.A." *Id.* at 793 n. 2.

*Reyes,* however, stands only as an example of the general rule, not as a departure. Objection must be made in the trial court unless a good reason exists not to do so. In *Reyes,* the good reason was a valid trial strategy to attempt to soften the blow of damaging information by delivering the impendent punch to the jury. An objection to one's own testimony is an absurdity. It is impossible. This Circuit consequently found the offensive use of damaging information to fall outside the general rule requiring a timely objection.

Rojas, however, offers no justification for his failure to object. He made no offensive use of his status within this country, whatever that status may be. He makes no other claim of good cause for not raising the objection at trial. In the absence of such a showing, we have no choice but to find that he cannot claim an objection was lodged to the use of the phrase "illegal alien." Fed.R.Evid. 103(a)(1). *See Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662 (5th Cir.1967) ("improper" and "inexcusable" appeals to sympathy and sectional prejudices of the jury are not appealable absent a timely objection at trial). Rojas' only possible recourse is establishing "plain error".[3]

II. Closing Argument as Plain Error

■ Even if Rojas has waived his right to appeal the use of the phrase "illegal alien," however, this Court is not precluded from reviewing the use of the phrase at trial. Fed.R.Evid. 103(d) provides: "Nothing in this rule [requiring objection to preserve appealability] precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court."[4] Our authority to review, we note, is limited to "plain errors," and the errors must affect "substantial rights," We find that allegations unsupported by the record that Rojas was an illegal alien might well have a serious and negative effect on his substantial right to an impartial jury. The only serious issue is whether the allegations rise to the level of "plain error."

■ The plain error rule is "not a run-of-the-mill remedy." *United States v. Gerald*, 624 F.2d 1291, 1299 (5th Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981). It is invoked "only in exceptional circumstances to avoid a miscarriage of justice." *Eaton v. United States*, 398 F.2d 485, 486 (5th Cir.), *cert. denied*, 393 U.S. 937, 89 S.Ct. 299, 21 L.Ed.2d 273 (1968). The exact delineation of plain error is difficult to articulate. We have defined plain error as error which is "both obvious and substantial." *United States v. Gerald*, 624 F.2d at 1299; *Sykes v. United States*, 373 F.2d 607, 612 (5th Cir. 1966), *cert. denied*, 386 U.S. 977, 87 S.Ct. 1172, 18 L.Ed.2d 138 (1967). But such elegant phraseology yields little guidance. The determination still rests ultimately on the facts of each case.

Perhaps the most telling guidelines were laid down by Justice Stone in 1936, when he wrote:

> In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the *fairness, integrity, or public reputation of judicial proceedings.*

*United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936) (emphasis added). Following the clarion call of Justice Stone's words, we must hold that the "fairness, integrity, or public reputation" of the proceedings in this case were adversely affected by the closing jury argument of defense counsel. The closing remarks included this paragraph:

> I hope—I hope—that you don't, because Mr. Rojas is an alien, give him any more benefit than you would any United States citizen who comes in this Court. If the situation were reversed and you or I were in Mexico—were illegal aliens in Mexico—I would hope Mexico would open up their Courts, would open up their job market, would open up their public schools, would open up their State hospi-

3. Judge Rubin joins in this opinion because *Collins* is the law of the circuit. However, should the issue be again properly presented, he would vote to reconsider *Collins*. Objections in limine, fully briefed and argued at a time when they can be given adequate consideration by both counsel and the court, deserve to be encouraged, in preference to the cryptic objections hurriedly argued and hastily ruled on at trial, unless the circumstances are such that a ruling can properly be made only at the trial.

4. The rule has its source in Rule 52(b) of the Federal Rules of Criminal Procedure. Advisory Committee Notes, Fed.R.Evid. 103.

tals, as we have in this country for Mr. Rojas. Certainly he is—I'm not saying we shouldn't do those things, but he shouldn't be entitled to any extra benefits because he is an illegal alien in this country than would any other citizen of the United States be entitled.

These remarks prejudiced the jury on two counts. First, by introducing irrelevant and unproven allegations that Rojas was an illegal alien, the defense clearly was appealing to the prejudice and bias of members of the jury on the basis of national origin. Although there was justification for presenting Rojas' Mexican citizenship to the jury to establish diversity jurisdiction, 28 U.S.C. § 1332(a)(2), his status as an "illegal" alien was completely irrelevant to the negligence claims the jury was to evaluate. Furthermore, the closing reference to "illegal alien" could have placed a prejudicial gloss on the many references throughout trial to Rojas as an "alien." Having laid a strong foundation through use of the term "alien" throughout trial, even counsel's single reference to the incendiary, derogatory expression "illegal alien" is prejudicial. Finally, the allegation that Rojas was in the country illegally is unsupported in the record.

Texas courts have found plain error in jury remarks that appeal to racial or ethnic bias. *Penate v. Berry,* 348 S.W.2d 167 (Tex. Civ.App.—El Paso 1961, *writ ref'd n.r.e.*), involved remarks to the jury that an alien has no right to "come into court and reach your hands into the pockets of an *American* citizen...." The court reversed and remanded for new trial, despite absence of a timely objection at trial. *See also Texas Employers' Insurance Ass'n v. Jones,* 361 S.W.2d 725 (Tex.Civ.App.—Waco 1962, *writ ref'd n.r.e.*) (claims to racial or religious prejudice justify new trial).

Second, these remarks were an impermissible invocation of the "golden rule" argument. As we recently explained,

> What every lawyer should know is that a plea to the jury that they "should put themselves in the shoes of the plaintiff and do unto him as they would have done unto them under similar circumstances.... [is] improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.

*Loose v. Offshore Navigation, Inc.,* 670 F.2d 493, 496 (5th Cir.1982), *quoting Ivy v. Security Barge Lines, Inc.,* 585 F.2d 732, 741 (5th Cir.1978), *rev'd on other grounds,* 606 F.2d 524 (5th Cir.1979) (en banc), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 815 (1980). *Accord, Burrage v. Harrell,* 537 F.2d 837 (5th Cir.1976); *Har-Pen Truck Lines, Inc. v. Mills,* 378 F.2d 705 (5th Cir.1967). The fact that the statement in this case was an inverse incantation of this golden rule is insufficient to validate the partiality inherent in the argument. *Loose, supra.* The "golden rule" argument, while not plain error, is normally ground for new trial. *Id.*

The closing remarks of defense counsel were highly prejudicial and a blatant appeal to jury bias. Although the district court gave a jury instruction emphasizing equal access to justice, even this instruction was ambiguous. The jury was instructed:

> You are instructed that all persons are equal before the law, and this case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. The law is no respector of persons. All persons, including partnerships, and other lawful organizations, stand equal before the law, and are to be dealt with as equals in a Court of Justice.

While its wording might have been adequate to indicate that aliens must be treated equally, it was not adequate to tell the jury that "illegal aliens" are "equal before the law." A jury could readily conclude that someone who is "illegal" is not "equal before the law" to law abiding citizens and jurors. We are not convinced that the jury instruction could rebuild the "fairness, integrity, or public reputation of jury proceedings" that Justice Stone admonished us to protect, *see Atkinson,* 297 U.S. at 160, 56

S.Ct. at 392. As we first noted in *Dunn v. United States,* 307 F.2d 883, 887 (5th Cir. 1962), "if you throw a skunk into the jury box, you can't instruct the jury not to smell it." Some references are so prejudicial that it is difficult for curative instructions to resuscitate fairness. *See, e.g., Pride Transport Co. v. Hughes,* 591 S.W.2d 631 (Tex. Civ.App.—Eastland 1979, *writ ref'd n.r.e.)* (disclosure of defendant's insurance coverage can be grounds for mistrial in Texas). Even assuming that a proper jury instruction could have cured prejudice, this instruction did not do so.

We hold that the obvious and blatant appeal in this case to racial and ethnic prejudice is plain error. In consideration of this impropriety, combined with an additional "golden rule" appeal to the jury's partiality, we must reverse the judgment of the district court and order a new trial.

## III. Proffered Testimony and Cross-Examination

Rojas also complains of several adverse rulings on the scope of permissible testimony and proper cross-examination. We find no abuse of discretion in limiting Rojas' cross-examination of the employers' expert witness, according to the guidelines of Fed.R.Evid. 403. He also complains that the court excluded relevant testimony regarding conversations that took place during his hospital stay. It is difficult to see what the probative value of the proffered testimony would have been, or how the testimony would have survived the scrutiny of the hearsay rules. Furthermore, it is not apparent that the exclusion of this testimony affected a "substantial right" of Rojas. In sum, we are unable to interfere with the trial court's discretion under Rule 403 regarding these evidentiary rulings.

## IV. Trial Court Remarks and Jury Instructions

Finally, Rojas complains of statements from the bench during presentation of his case and in the jury instructions that he believes prejudiced his case. The statements made while witnesses were on the stand consist of "disparaging" remarks on the quality of the case. The district judge interrupted questioning a few times with remarks such as "I don't see any reason for pursuing that," and "You are flat losing me. I don't know what in the world this has to do with this fellow falling off that horse. I can't see any materiality of that." Although such statements may not be the most totally neutral way to express concern over irrelevance or delay as defined in Article IV of the Federal Rules of Evidence, the court obviously was trying to expedite the efficient presentation of issues at trial rather than to obliterate the plaintiff's credibility.

Neither were the jury instructions otherwise inherently prejudicial. Rojas objects, first, to an instruction on contributory negligence since he claims the defense presented no evidence whatsoever on contributory negligence. However, we find an adequate claim of contributory negligence in the trial record, and the district court properly instructed the jury to consider that barrier to recovery.

Second, Rojas claims substantial error in the jury instruction on payment of medical expenses. The court instructed:

> The fact that the defendants have paid medical expenses for employees in the past and may have paid a portion of the Plaintiff's medical expenses is no evidence that the Defendants were negligent *or liable* to the Plaintiff for such expenses, and you are instructed not to regard it as such.

(Emphasis added.)

Rojas admits this to be an adequate instruction regarding the tort claims, but claims that use of the term "liable" eradicates any possibility of liability on the employment contract claims he also made against the employers. He claims the evidence that his employers paid his medical bills should prove contractual obligations stemming from the employment relationship. However, we do not find that the jury instructions prejudiced Rojas' contract claims, and we will not reverse for jury instructions that might have been marginally preferable

toward one of the parties, especially where no timely objection to the instruction was made in the court below. Fed.R.Civ.P. 51.

V. Conclusion

We have examined other exceptions to the manner in which the trial was conducted and find no further grounds for reversal. There is substantial evidence to support the jury verdict in this case. However, on the basis of the defendants' closing references to Rojas as an "illegal alien" and their appeal to jury prejudice, we must reverse the judgment of the district court and remand for new trial.

REVERSED AND REMANDED.