## SHAKARJI, et al. v DEMARIA, et al.

### Case Nos. 89-511-CA-10-E and 89-512-CA-10-P

Eighteenth Judicial Circuit, Seminole County

August 28, 1990

### APPEARANCES OF COUNSEL

**Patricia A. Doherty, Esquire,** for plaintiff.

**Philip Turner King, Jr., Esquire,** for defendant.

### OPINION OF THE COURT

O. H. EATON, JR., Chief Judge.

### *ORDER DENYING MOTION FOR PROTECTIVE ORDER AND SETTING CONDITIONS FOR DISCOVERY*

The plaintiffs have scheduled the deposition of the records custodian of James Urbach, M.D. Dr. Urbach is an orthopedic surgeon who has been hired by the defendants. He has examined the plaintiff and will testify against him at trial.

The records custodian has been directed to produce the following records at the deposition:

"1. Any and all Independent Medical Examinations and/or Compulsory Medical Examination Reports by Dr. James Urbach and documenting his opinions and findings for the time period of January 1, 1989, to the present.

2. Any and all bills rendered for Independent Medical Examinations and/or Compulsory Medical Examinations performed by Dr. James Urbach between January 1, 1989, to the present."

The defendants have moved for a protective order. The motion alleges that the documents sought are irrelevant and that producing them would be unduly burdensome and harassing. They cite *Argonaut Insurance Co. v Perlata,* 358 So.2d 232 (Fla. 3d DCA 1978) and *Fidelity Casualty Co. of New York v Lopez,* 375 So.2d 59 (Fla. 4th DCA 1979) as authority for their position.

The adversarial process in personal injury cases has created a whole class of experts who profit mightily and regularly through the sale of their services to plaintiff's attorneys, insurance attorneys, or both. The medical profession provides its share of these experts. Dr. Urbach, the defense expert in this case, testifies regularly in personal injury cases as counsel for the defendants freely admits. (Depo. II-P.20).[1]

When experts disagree, the evidence code provides for methods to impeach or discredit their opinions. Showing that the witness has a bias or an interest in the case is one of the methods of impeachment which is authorized. F.S. 90.608(1)(b).

Wide latitude must be given to develop proof of bias because it exists in so many forms. Graham, *Handbook of Florida Evidence,* Subsection 608.6. For instance, the fact that a witness is being paid by a party to testify can provide proof of bias. Ehrhardt, *Florida Evidence,* 2d Ed., Subsection 608.4. This may not be of major concern when paid experts testify for both sides but when it is shown that there has been a pattern of compensation in past cases, an inference may rise that the witness has slanted his testimony so he would be hired to testify in a future case. *Pandula v Fonseca,* 199 So. 358 (Fla. 1940); *Collins v Wayne Corp.,* 621 F.2d 777 (5th Cir. 1980).

Courts have discretion to determine what matters may be inquired about in order to show bias and this discretion should not be disturbed

[1] Dr. Urbach schedules his depositions at noon and only allows one hour although he charges those who seek to discover his opinions $350.00 an hour for the privilege. His deposition in this case took two of his lunch hours. Reference to his testimony shows Depo. I (April 11, 1990) or Depo. II (April 18,1990) in order for the read to more easily find the page cited.

absent a showing of clear abuse. *Pandula v Fonseca, supra.* The record in this case, consisting of Dr. Urbach's deposition, develops the following information:

1. Dr. Urbach performed the independent medical evaluation in this case for $336.00 (Depo. I.-p.4).

2. He charges a minimum of $300.00 for such an examination. (Depo. I-p.22).

3. He charges to have a conference with the attorney who hires him based upon time spent but the amount charged per hour depends upon "complexity." (Depo. I-p.23).

4. He charged $100.00 to have a conference with the defendants' attorney prior to the deposition. (Depo. I-p.24).

5. He charges $450.00 an hour for trial testimony including travel time and waiting at the courthouse. (Depo. I-p.20).

6. He regularly does independent medical examinations. (Depo. II-p.20). But he believes these examinations to be less than one percent of his practice. (Depo. I-p.16).

7. In order to reach his opinion about the plaintiff's medical condition, he relied upon both his training and his experience. (Depo. I-pp.11;14).

8. He does not keep statistical data to show the extent of his experience in treating various parts of the body. (Depo. I-pp.16-19).

Assuming it takes Dr. Urbach thirty minutes to travel each way from his office to the courthouse in Sanford and that his testimony will take two hours including waiting time, he will bill the following amounts on this case:

| | |
|---|---|
| 1. IME | $336.00 |
| 2. Conference with defendants' attorney | 100.00 |
| 3. Deposition | 750.00 |
| 4. Trial testimony | *1,350.00* |
| TOTAL | $2,536.00 |

This amount does not, in itself, provide much meaningful information other than the fact that Dr. Urbach is certainly well compensated by the legal community. However, it is of compelling interest to determine just how often he is consulted and retained in these cases and examination of the records requested will reveal that information as well as other evidence which is relevant to the issue of bias.

For instance, if Dr. Urbach's records show that his opinions are

190

always or almost always favorable to the party hiring him, bias would be clearly shown. Likewise, if his automation equipment is programmed to produce form reports, it can be inferred that he has a proclivity to predetermine the results of his examinations. Additionally, the number of examinations involved will confirm or place into question the percentage of his practice derived from these examinations.

The cases of *Argonaut Insurance Co. v Perlata,* 358 So.2d 232 (Fla. 3d DCA 1978) and *Fidelity Casualty Co. of New York v Lopez, supra,* which are relied upon by the defendants are easily distinguished.

The *Argonaut* case was a medical malpractice case. The requested production spanned an eleven year period and included "Any and All medical reports, writing, memoranda, consent forms, relating to silicone injections in Defendant B. G. Gross' patients from 1966 to the present." The court held that to require production of records over an eleven year period was excessive and burdensome. It also held that at the time of the appeal there had been no showing of relevancy. 358 So.2d at 233. In obiter dictum the court then stated that "to permit a party to inject into the public record medical information of a stranger to the suit, under the guise that it has a bearing on the competency of the doctor, would be unconscionable." 358 So.2d at 233. No authority was cited for that proposition.

In the *Fidelity Casualty Co. of New York* case, the issue was whether an insurance company was employing a doctor for the purpose of wrongfully denying benefits to other insureds. The plaintiff requested "all the doctor's reports pertaining to the examination of any patients, referred to him by the company over the preceding two years." The court cited the *Argonaut* case and held that it is error "to permit a party to inject into the public records, medical information of a stranger to the suit."

The flawed reasoning in *Fidelity Casualty Co. of New York* is apparent. *Argonaut* does not hold that records of patients other than a party can never be produced. It holds that excessive and unduly burdensome request for production will not be allowed and there must be some relevancy shown when records are requested to be produced. As the court in *Argonaut* pointed out, the issue in medical malpractice is whether or not the defendant used the proper standard of care and that issue can be proved by methods other than using records of strangers. 358 So.2d at 233. The present case is not a malpractice case and Dr. Urbach is not a party. The issue is not the level of care he provides. It is whether his financial interest in these cases supports the

**191**

inference of bias and whether this bias is reflected in past cases upon which he relies in order to form his present opinions.

Unfortunately, the *Fidelity Casualty Co. of New York* case has been cited along with the *Argonaut* case for authority to quash an order compelling production of hospital records in another medical malpractice case. *See, North Broward Hospital District v Lucas,* 448 So.2d 622 (Fla. 4th DCA 1984). The issue in *North Broward* was obviously relevancy and not discoverability. *See, McCann v Foisy,* 522 So.2d 341 (Fla. 4th DCA 1989) and *Teperson v Donato,* 371 So.2d 703 (Fla. 3d DCA 1979) both of which correctly sets forth the relevancy issue.

In *Ventimiglia v Moffitt,* 502 So.2d 14 (Fla. 4th DCA 1986), another medical malpractice case, the Fourth District zeroed in on the relevancy issue. In that case, the defendant physician predicated his diagnosis of the plaintiff at least in part upon his experience with other patients. The trial court ordered production of records of other patients he had treated for conditions similar to that suffered by the plaintiff. Any possible reference to the identity of the patient was to be deleted from the records and protected from discovery.

In the present case, the request is not for all records of all patients ever treated by Dr. Urbach. It is only for the less than one percent of his records involving injured plaintiffs upon whom he has been requested by an adversary to perform an independent medical evaluation since January 1, 1989. The production of this information will enable the plaintiff to evaluate the level of bias, if any, that Dr. Urbach has in offering his opinion of the plaintiff's injuries and it is clearly calculated to lead to admissible evidence. Rule 1.280(b)(1). *See, Calderbank v Cazares,* 435 So.2d 377 (Fla. 5th DCA 1983). The names of patients and other persons can be deleted from the records thereby protecting their privacy. *Amisub, Inc. v Kemper,* 543 So.2d 470 (Fla. 4th DCA 1989). Accordingly,

IT IS ADJUDGED:

The records custodian in Dr. Urbach's office is directed to produce the items listed on the subpoena at a future date upon at least ten days notice. Copies of the records shall be made with the identity and addresses of patients and persons other than medical personnel deleted. The plaintiff shall pay for the actual cost of the copies and the materials used. He shall also reimburse Dr. Urbach for the actual cost of the time the records custodian uses to make the copies and the reasonable value of the use of the copy machine.

ORDERED at Sanford, Seminole County, Florida, this 28th day of August, 1990.