Johnnie Lee **WILCOX** et al., Appellants,

v.

**SMULLIAN BUILDING SUPPLY COM-PANY**, Appellee.

No. 23527.

United States Court of Appeals
Fifth Circuit.

May 10, 1967.

Samuel S. Jacobson, Albert Datz, Law Offices, Jacksonville, Fla., for appellants.

O. R. T. Bowden, David A. Barthoff, Robert C. Lanquist, Hamilton & Bowden, Jacksonville, Fla., for appellee.

Before PHILLIPS,* COLEMAN and SIMPSON, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

Wilcox and 12 other individuals[1] instituted this action against Smullian Building Supply Company,[2] seeking to recover under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201 et seq.,[3] amounts alleged to be due them from the employer on account of work performed by them for which they were paid less than the minimum wage fixed by the Act and for work in excess of 40 hours per week for which they were not paid overtime compensation as provided in the Act. After discovery proceedings had been completed, the employer filed a motion for summary judgment with supporting affidavits. The court granted the summary judgment and the employees have appealed.

The dates alleged to have been worked by the employees varied, but the earliest date alleged was October 31, 1961, and the latest October 31, 1963.

By the Fair Labor Standards Amendments of 1961, Act of May 5, 1961, effective 120 days after that date, Congress broadened the coverage of the Act.

The provisions of § 2 of the Fair Labor Standards Amendments of 1961, 29 U.S.C.A. § 203(s), (75 Stat. 65, 66) on its effective date in part read:

"(s) 'Enterprise engaged in commerce or in the production of goods for commerce' means any of the following in the activities of which employees are so engaged, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person:

"(1) any such enterprise which has one or more retail or service establishments if the annual gross volume of sales of such enterprise is not less than $1,000,000, exclusive of excise taxes at the retail level which are separately stated and if such enter-

---

* Of the Tenth Circuit, sitting by designation.

1. Hereinafter called the employees.

2. Hereinafter called the employer.

3. Hereinafter called the Act.

prise purchases or receives goods for resale that move or have moved across State lines (not in deliveries from the reselling establishment) which amount in total annual volume to $250,000 or more; * * * *"

The provisions of § 9 of the Fair Labor Standards Amendments of 1961, 29 U.S.C.A. § 213(a) (75 Stat. 65, 71) on its effective date in part read:

"(a) The provisions of sections 206 and 207 of this title shall not apply with respect to—

\* \* \* \* \* \*

"(2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located, if such establishment—

"(i) is not in an enterprise described in section 203(s) of this title, or

\* \* \* \* \* \*

"(iv) is in such an enterprise and has an annual dollar volume of sales (exclusive of excise taxes at the retail level which are separately stated) which is less than $250,000.

"A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry; * * *."

In one of such affidavits, dated January 7, 1966, Herbert M. Smullian averred that he is president of the employer and has been since it was incorporated in 1954; that he also acts as general manager, and manages and supervises the operation of each department; that he is familiar with its financial records, including purchases, sales and accounts receivable, and is responsible for the preparation of its annual financial statements; that during the times here pertinent the employer engaged in the sale of building materials and supplies to home building contractors and home owners; that salesmen for the employer went from job site to job site and contacted the builders for possible sales; that all of the sales made were for specific materials and for specific immediate use, and usually for one and not more than three houses being built at the particular time, and that the employer never made blanket sales to contractors; that prior to 1963 the employer sold only light construction items, such as brick, roofing, gypsum products, foundation material, residential doors, and hardware; that prior to 1963 it sold to no large industrial contractors; that it was in "late 1962" when the employer acquired industrial material lines and began to solicit customers other than home building contractors; that the employer did not make any retail sales outside of Florida, prior to 1962; that prior to September, 1961, the employer's total gross receipts from wholesale sales were less than 10 per cent of its total gross receipts from sales; that on the effective date of the Fair Labor Standards Amendments of 1961 the employer's gross annual sales exceeded $1,000,000 and brought it within coverage of the Act, and that during and after September, 1961, the employer paid its employees the minimum wages required by such amendments to be paid to newly covered employees.

In another of such affidavits, Jefferey M. Koehler averred that he has been employed by the employer since November, 1953; that he was first employed as a salesman; that in 1960 he was promoted to sales manager; that he still occupies that position, but that since 1963 he has been engaged primarily in solicitation of sales to industrial construction companies; and he further averred substantially the same facts with respect to the character of the employer's business and the means and methods employed in carrying on such business in 1961, 1962 and 1963.

In a third affidavit, the chief accountant of the employer since 1956 set forth the wholesale sales and the retail sales in terms of percentages for the years 1956

to 1963, inclusive. He averred that in 1962 wholesale sales were 17.6 per cent and retail sales 82.4 per cent, and in 1963 wholesale sales were 20 per cent and retail sales 80 per cent, and that in 1961, 1960 and 1959 the wholesale sales were less than 10 per cent of the total sales.

Counsel for the employer assert that prior to the effective date of the Fair Labor Standards Amendments of 1961 it came within the provisions of the Act exempting retail establishments from the coverage thereof, as shown by the affidavits filed in support of the motion for summary judgment. They concede that its employees came within the coverage provided by such Amendments on the effective date thereof. They further assert that the employer has fully complied with the wage requirements and overtime compensation provisions of such Amendments since their effective date and therefore is not indebted to the employees in any amount.

On the other hand, counsel for the employees assert that the character of the employer's business was so changed in 1962 and thereafter that its employees would have been covered under the provisions of the Act before such Amendments were enacted, and therefore they were entitled to wages and overtime compensation under the provisions of 29 U.S.C.A. § 206(a) (1) (75 Stat. 67) and 29 U.S.C.A. § 207(a) (1) (75 Stat. 69), rather than the provisions of 29 U.S.C.A. § 206(b) (1) (75 Stat. 67) and 29 U.S.C.A. § 207(a) (2) (75 Stat. 69). They assert in the alternative that at least the affidavits do not show that from and after the latter part of 1962, the character of the employer's business was not so changed as to bring its employees within the coverage of the Act, as it read prior to the effective date of such Amendments.

In order to ease the impact on employers whose employees were brought under the Act by the provisions of the Fair La-

bor Standards Amendments of 1961, Congress provided that during the first three years following the effective date of such amendments such an employer should pay each of his employees not less than $1. per hour and during the fourth year from such date not less than $1.15 per hour and thereafter "not less than the rate effective under paragraph (1) of subsection (a) of this section"; [4] and that such an employer should pay each of his employees compensation at a rate not less than one and one-half times the regular rate at which he was employed for a work week longer than 44 hours during the third year from the effective date of such Amendments, for a work week longer than 42 hours during the fourth year from such effective date and for a work week longer than 40 hours after the end of such fourth year.[5]

If, however, an employer between the effective date of the Fair Labor Standards Amendments of 1961 and the end of the fourth year after such effective date by his own choice engaged in a business of a character that his employees would be covered by the Act, had not such Amendments been enacted, the reason for easing the impact of such Amendments would not be present. In such a situation, we think the employer would be required to pay compensation at a rate not less than that provided in 29 U.S.C.A. § 206(a) (1) (75 Stat. 67) and overtime pay for hours worked in excess of 40 hours per week, 29 U.S.C.A. § 207(a) (1) (75 Stat. 69) from the date he engaged in such business. Otherwise, an employer whose employees were brought under the coverage of the Act by such Amendments on the effective date thereof, and who, during the first four years immediately thereafter, so changed the character of his business that it would have been covered by the Act prior to the effective date of such Amendments, would have a substantial competitive advantage over an employer who, during such four-year period, entered into a new business

---

4. 29 U.S.C.A. § 206(b) (1) (75 Stat. 67), 29 U.S.C.A. § 206(a) (1) (75 Stat. 67).

5. 29 U.S.C.A. § 207(a) (2) (75 Stat. 69).

of a character that his employees would have been covered under the provisions of the Act before the effective date of such Amendments, and who was selling his goods in competition with the employer who so changed the character of his business during such interval.

Whether, prior to October 31, 1963, the employer so changed the character of his business that the employees would have been covered by the provisions of the Act prior to the effective date of such Amendments, we cannot determine on this record.

Accordingly, the judgment is reversed and the cause remanded for further proceedings consistent with this opinion.