453 F.2d 515
 20 Wage & Hour Cas. (BN 365, 67 Lab.Cas. P 32,595
 James D. HODGSON, Secretary of Labor, United States
Department of Labor, Appellant,
v.
Wilson JONES, Sr., d/b/a Quick Service Laundry & Cleaners
and Quick Service Laundry & Cleaners, Inc., Appellees.
 No. 71-1096.
 United States Court of Appeals,
Eighth Circuit.
 Dec. 8, 1971.
Rehearing and Rehearing En Banc Denied Jan. 13, 1972.
 
 Sylvia S. Ellison, Peter G. Nash, Sol. of Labor, Bessie Margolin, Associate Sol., Carin Ann Clauss, LeRoy M. Jahn, Attys., U. S. Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Sol., for appellant.
 James A. King, Jr., Edgar E. Bethell, Bethell, Callaway, King & Robertson, Fort Smith, Ark., for appellees.
 Before VAN OOSTERHOUT, HEANEY and ROSS, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 The principal[1] issue in this case is whether the trial court erred in finding that the defendants were subject to the minimum wage standards of Sec. 6(b)[2] and the maximum hours standards of Sec. 7(a) (2)[3] of the Fair Labor Standards Act of 1938, as amended by the Fair Labor Standards Amendments of 1966, rather than the higher standards of Secs. 6(a) (1)[4] and 7(a) (1)[5] of the Act as amended.
 
 
 2
 The Secretary of Labor brought this action against the defendants to enjoin them from violating 29 U.S.C. Secs. 206(a) (1) and 207(a) (1) (Supp.1971), and to restrain them from continuing to withhold unpaid wages due their employees. After a trial, the trial judge dismissed the action. The Secretary has appealed.
 
 
 3
 The defendants[6] have operated two laundries for a number of years. Until 1967, they were completely exempted, by Sec. 13(a) (3) of the unamended Act, from minimum wage-maximum hour coverage. Section 13(a) (3) exempted laundries with more than fifty percent of their sales within the state in which they were located, provided that seventy-five percent of such sales were made to customers not engaged in a mining, manufacturing, transportation or communications business. Act of Oct. 26, 1949, Ch. 736, Sec. 11, 63 Stat. 910.[7] Section 13(a) (3) was repealed by the 1966 amendments to the Act, subjecting the defendants to minimum wage-maximum hour coverage for the first time.
 
 
 4
 *****
 
 
 5
 * * *
 
 
 6
 The 1966 amendments raised the minimum wage, over a two-year period, to $1.60 per hour for businesses previously subject to the Act. However, the amendments mandated a more gradual transition to the $1.60 minimum wage and forty-hour week for businesses, such as the defendants, which had previously been exempted, but which were "brought within the purview of th[ese] section[s] [minimum wage-maximum hours] by the [amendments]." 29 U.S.C. Secs. 206(b) and 207(a) (2) (Supp.1971). The minimum wage was to be raised to $1.60 per hour over a period of four years, while maximum hours were to be reduced to forty over a two-year period. The defendants began paying employees according to the graduated standards on February 1, 1967, the effective date of the Act.
 
 
 7
 However, in April, 1967, and July, 1968, respectively, the two establishments operated by the defendants began doing over twenty-five percent of their sales with a manufacturer. Following this change in their business, the defendants would no longer have qualified for the Sec. 13 (a) (3) exemption, had it not been repealed. Nevertheless, the defendants continued to pay according to the graduated standard.
 
 
 8
 The Secretary contends that the change in the defendants' business brought them under the higher standards of coverage of 29 U.S.C. Secs. 206(a) (1) and 207(a) (1) (Supp.1971). He argues that, if the 1966 amendments had not repealed Sec. 13(a) (3), the defendants would have lost their exemption at that point. Thus, the Secretary argues that the defendants are no longer businesses entitled to coverage under the graduated standards of 29 U.S.C. Secs. 206(b) and 207(a) (2) (Supp.1971) because they are no longer "brought within the purview of th[ese] section[s] [minimum wage-maximum hours] by the [amendments]." Rather, they are "brought within the purview of th[ese] section[s]" by virtue of the changes in their business. Under the Secretary's interpretation of the Act, the repealed section, Sec. 13(a) (3), is to have continued application for the limited purpose of determining which of the two standards to apply.
 
 
 9
 The defendants argue, in essence, that because they were initially covered by the amendments' graduated standards, they are insulated from compliance with the higher standards. This is so, they argue, even though later changes in their operations would have brought them within the unamended Act's coverage. The Act does not presently provide for a change in coverage because of a change in business operations. Because Sec. 13(a) (3) has been repealed and replaced by an entirely different scheme, the defendants argue that its criteria should be given no effect in determining coverage under the amended Act.
 
 
 10
 The Secretary bases his position upon the interpretation of the Act by the Wage-Hour Administrator, first published on February 18, 1967.
 
 The administrator wrote:
 
 11
 "A laundry or dry cleaning establishment of such an enterprise which meets the tests for exemption under the present law, and continues to meet these tests after February 1, 1967, must, beginning on that date, pay its employees in accordance with the minimum wage and overtime standards for newly covered employment listed on page 2 of the enclosed pamphlet on Laundries and Dry Cleaning Establishments. These standards are effective on and after February 1, 1967 only with respect to covered employment which, in the particular workweek, would not be subject to the act's pay provisions if the amendments had not been enacted.
 
 
 12
 "If, in any workweek an employee is individually engaged in commerce or in the production of goods for commerce as an employee of an establishment which could not qualify for exemption under the law prior to the 1966 amendments, as explained on page 1 of the pamphlet, he would be subject to the minimum wage and overtime pay standards specified for previously covered employment in the first paragraph on page 2 of the pamphlet. * * *"
 
 
 13
 WHM 91:1159 (October 18, 1969).
 
 
 14
 Interpretations of the Act by the Wage-Hour Administrator are entitled to considerable weight. Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944); National Automatic Laundry and Cleaning Council v. Shultz, 443 F.2d 689 (D.C.Cir.1971); Shultz v. W. R. Hartin & Son, Inc., 428 F.2d 186 (4th Cir. 1970).
 
 
 15
 The Wage-Hour Administrator's interpretation is in keeping with the spirit of the amendments, which was to expand and broaden the coverage of the Act and raise the minimum wage benefits. H.Rep.No. 1366, 89th Cong., 2d Sess., p. 2; S.Rep.No. 1487, 89th Cong., 2d Sess., p. 3 (1966), U.S.Code Cong. & Admin.News, 1966, p. 3002. In particular, Congress intended sweeping coverage of the entire laundry industry by the Act. National Automatic Laundry and Cleaning Council v. Shultz, supra 443 F.2d at 706. Since the Act and its amendments are remedial legislation, any exceptions to normal coverage should be narrowly construed. Ibid. at 706, and the cases cited therein.
 
 
 16
 Furthermore, the administrative interpretation is in keeping with specific underlying policies of the Act and its amendments. The Fifth Circuit,[8] in adopting the same interpretation, has pointed out that "* * * the purpose of the transition scheme was to afford some relief to those enterprises which were of a type not heretofore covered. * * * Businessmen were given a grace period in which to adjust to the new higher requirements. * * *" Shultz v. Morris, 315 F.Supp. 558, 566 (M.D.Ala.1970), aff'd per curiam sub nom. Hodgson v. Morris, 437 F.2d 896 (5th Cir. 1971). In the present case, the defendants have long known that when their business with a manufacturer exceeded twenty-five percent of their total sales, they would be subject to the normal minimum wage-maximum hours requirements. This policy had been reiterated by the Wage-Hour Administrator subsequent to the 1966 amendments and prior to the change in defendants' business. Thus, there was no change in interpretation, no detrimental reliance[9] and no surprise. Shultz v. Morris, supra 315 F.Supp. at 566.
 
 
 17
 The court in Shultz v. Morris, supra, pointed out that Congress intended to treat similar businesses alike. No laundry was to have a competitive advantage because of the Act. National Laundry and Cleaning Council v. Shultz, supra 443 F.2d at 705, 706. But if the defendants' contentions are accepted, the amendments would insulate the defendants from paying the same wages as other laundries of the same or even smaller size, solely because the latter laundries were doing business with manufacturers or similar enterprises before the 1966 amendments.
 
 
 18
 In light of these considerations, we feel that the interpretation of the administrator was correct and we follow it. On the basis of this interpretation, the trial court should have found that the defendants were subject to the higher standards of 29 U.S.C. Secs. 206(a) (1) and 207(a) (1) (Supp.1971).
 
 
 19
 The judgment dismissing the action is reversed, and the case is remanded to the trial court with instructions to enter judgment on the merits in favor of the Secretary of Labor, along with such relief as is deemed appropriate.
 
 
 
 [1]
 The defendants raise two additional issues. The first issue is that we should not reach the merits because of the Secretary's failure to diligently prosecute this action. We reject this contention. Hodgson v. Daisy Manufacturing Company, 445 F.2d 823, 825 (8th Cir. 1971). The defendants have not established that they were substantially prejudiced by a delay in prosecution
 The second issue is that the defendants should not now be brought under the Act, because they relied on the advice of their attorney, their accountant and numerous trade associations in paying employees according to the graduated standards of 29 U.S.C. Secs. 206(b) and 207(a) (2) (Supp.1971). Such reliance is not a defense to this action. Shultz v. Morris, 315 F.Supp. 558, 566 (M.D.Ala.1970), aff'd per curiam sub nom. Hodgson v. Morris, 437 F.2d 896 (5th Cir. 1971). See also, Hodgson v. Daisy Manufacturing Company, supra 445 F.2d at 825.
 
 
 [2]
 29 U.S.C. Sec. 206(b) (Supp.1971), amending 29 U.S.C. Sec. 206, provides that:
 "(b) Every employer shall pay to each of his employees (other than an employee to whom subsection (a) (5) of this section applies) who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, and who in such workweek is brought within the purview of this section by the amendments made to this chapter by the Fair Labor Standards Amendments of 1966, wages at the following rates:
 "(1) not less than $1 an hour during the first year from the effective date of such amendments,
 "(2) not less than $1.15 an hour during the second year from such date,
 "(3) not less than $1.30 an hour during the third year from such date,
 "(4) not less than $1.45 an hour during the fourth year from such date, and
 "(5) not less than $1.60 an hour thereafter."
 
 
 [3]
 29 U.S.C. Sec. 207(a) (2) (Supp.1971), amending 29 U.S.C. Sec. 207, provides that:
 "(2) No employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, and who in such workweek is brought within the purview of this subsection by the amendments made to this Act by the Fair Labor Standards Amendments of 1966-
 "(A) for a workweek longer than forty-four hours during the first year from the effective date of the Fair Labor Standards Amendments of 1966,
 "(B) for a workweek longer than fortytwo hours during the second year from such date, or
 "(C) for a workweek longer than forty hours after the expiration of the second year from such date, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."
 
 
 [4]
 29 U.S.C. Sec. 206(a) (1) (Supp.1971), amending 29 U.S.C. Sec. 206, provides that:
 "(a) Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:
 "(1) not less than $1.40 an hour during the first year from the effective date of the Fair Labor Standards Amendments of 1966 and not less than $1.60 an hour thereafter, except as otherwise provided in this section:"
 
 
 [5]
 29 U.S.C. Sec. 207(a) (1) (Supp.1971), amending 29 U.S.C. Sec. 207, provides that:
 "(a) (1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."
 
 
 [6]
 The individual defendant is an owner and is the president of the corporate defendant
 
 
 [7]
 Section 13(a) (3) provided that:
 "(a) The provisions of sections 206 and 207 of this title shall not apply with respect to-
 "(3) any employee employed by any establishment engaged in laundering, cleaning, or repairing clothing or fabrics, more than 50 per centum of which establishment's annual dollar volume of sales of such services is made within the State in which the establishment is located: Provided, That 75 per centum of such establishment's annual dollar volume of sales of such services is made to customers who are not engaged in a mining, manufacturing, transportation, or communications business; or * * *" (Emphasis included.)
 
 
 [8]
 See Shultz v. Morris, supra 315 F.Supp. at 564-566, in which the defendant was brought within the coverage of the Act by the provisions of the 1966 amendments lowering dollar volume requirements. His dollar volume later exceeded that which would have exempted him from the Act before the amendments. The court found that when this occurred, he became subject to the higher standards of 29 U.S.C. Secs. 206(a) (1) and 207(a) (1) (Supp.1971), rather than the graduated standards. The Court of Appeals affirmed on the basis of the District Court's opinion. See also, Wilcox v. Smullian Building Supply Company, 377 F.2d 480 (5th Cir. 1967)
 
 
 [9]
 The defendants allege that they were informed by an assistant supervisor of the Little Rock Federal Wage-Hour Office that the Sec. 13(a) (3) exemption would have no effect after the effective date of the 1966 amendments. There is no record of what was said on this occasion, the name of the officer, or the exact date. The informal assurances of a subordinate official cannot be relied on by the defendants, in view of the authoritative interpretation by the Wage-Hour Administrator. See, National Automatic Laundry and Cleaning Council v. Shultz, 443 F.2d 689, 701 (D.C.Cir.1971)