Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Appellant,

v.

BEREUTER'S, INC., Appellee.

No. 82–1711.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1983.

Decided April 13, 1983.

Rehearing Denied June 22, 1983.

T. Timothy Ryan, Jr., Sol. of Labor, Beate Bloch, Associate Sol., Joseph M. Woodward, Deputy Associate Sol., Gregory O'Duden, Atty., U.S. Dept. of Labor, Washington, D.C., for appellant.

Nelson & Harding, William A. Harding, Lincoln, Neb., for appellee.

Before LAY, Chief Judge, and BRIGHT and ROSS, Circuit Judges.

BRIGHT, Circuit Judge.

The Secretary of Labor brought suit under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–219 (1976 & Supp IV 1980), against Bereuter's, Inc., a Nebraska corporation, to recover unpaid overtime compensation and liquidated damages on behalf of three employees of Bereuter's for the period February 5, 1978 through February 2, 1980. The parties stipulated to the facts, and on cross-motions for summary judgment the district court rejected the contentions of the Secretary, accepted the defense of an exemption offered by Bereuter's, and entered a judgment of dismissal of the action. The Secretary brings this appeal. For reasons outlined below, we reverse and direct the entry of judgment in favor of the Secretary.

I. *Background.*

The facts, as stipulated to by the parties, disclose that Bereuter's failed to pay Bert Barnes, a partsman, and Ricky Hans and Robert Peeks, service mechanics, the statutory overtime premium for hours worked in excess of forty hours per work week as provided for in 29 U.S.C. § 207. Bereuter's refused to pay the overtime compensation contending that its business operations as an automobile dealer entitled it to an exemption under 29 U.S.C. § 213(b)(10)(A). That provision exempts from the overtime premium requirement:

> [A]ny salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trucks, or farm implements, if he is employed by a nonmanufacturing establishment *primarily engaged* in the business of selling such vehicles or implements to ultimate purchasers[.] [29 U.S.C. § 213(b)(10)(A) (emphasis added).]

Bereuter's engages in a number of business activities including the retail sale of cars and trucks; the leasing of cars; the sale of hardware, tires, gasoline, parts, and batteries; and the wholesale sale of cars, trucks, gasoline and petroleum products. Bereuter's asserts that its main or "primary" business activity is the retail sale of automobiles and trucks and, therefore, maintains that it meets the requirements set forth in the exemption. Bereuter's contention rests on the fact that its annual sales in 1978 and 1979, the years in issue, disclose that more of its receipts came from the retail sales of automobiles and trucks than from any other of its business activities. According to the stipulation, a detailed analysis of the total volume of business done in 1978 and 1979 discloses the following:

|                                                            | 1978         | 1979         |
| ---------------------------------------------------------- | ------------ | ------------ |
| Retail New and Used Car & Truck Sales                      | $229,412.00  | $227,601.50  |
| Wholesale Sales of Cars, Trucks, Gasoline & Petroleum Products | $72,016.82   | $138.002.26  |
| Other Retail Sales of Hardware, Tires, Batteries, Parts, Labor & Misc. | $179,279.00  | $209,879.24  |

The Secretary, on the other hand, asserts that Bereuter's does not qualify for the exemption because less than one-half of that establishment's annual dollar volume of sales and business receipts comes from the retail sale of automobiles and trucks. The Secretary relies on a regulation, 29 C.F.R. § 779.372(d), as a basis for rejecting Bereuter's exemption defense. That regulation provides:

> (d) **Primarily engaged**. As used in section 13(b)(10), primarily engaged means the major part or over 50 percent of the salesman's, partsman's, or mechanic's time must be spent in selling or servicing the enumerated vehicles. As applied to the establishment, primarily engaged means that over half of the establishments annual dollar volume of sales made or business done must come from sales of the enumerated vehicles. [29 C.F.R. § 779.372(d).]

The district court rejected the Secretary's application of the regulation to Bereuter's. The district court noted that while the over-fifty-percent requirement is a feasible means of determining the primary business activity of a business engaged in only two lines, "the regulation is ill-adapted to the situation involving a business engaged in more than two lines of business activity." The district court observed that under the interpretation proposed by the Secretary, the business activity responsible for generating the greatest percentage of the total annual dollar volume of business done, although not fifty percent of that total, could not, under the definitional activity test of 29 C.F.R. § 779.372, be deemed the primary business activity, even though it was the

principal business activity in terms of total business activity generated. The district court rejected the Secretary's interpretation, and found that Bereuter's qualified for the exemption. We disagree with the district court's analysis.

## II. *Discussion.*

■ The Fair Labor Standards Act exemptions are to be narrowly construed against the employer asserting them, and ought to be applied only in those circumstances which plainly and unmistakably come within their terms and spirit. *See Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); *Hodgson v. Jones,* 453 F.2d 515, 519 (8th Cir.1971). Moreover, the Secretary's interpretations are entitled to considerable weight. *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944); *Hodgson v. Jones, supra,* 453 F.2d at 518–19.

■ Our examination of the sparse legislative history indicates Congress' intention to exempt only those businesses which have as their essential nature the retail sales of automobiles, trucks or farm implements. The forerunner of the exemption here at issue was formulated in 1960 when Congress first considered the wide-ranging FLSA amendments enacted in 1961.[1] In an amendment adopted by the Senate, Senator Anderson proposed to exempt those establishments which sold automobiles or trucks from the FLSA's wage and hour requirements. 106 Cong.Rec. 16691 (1960). The Senator explained that the purpose of the amendment was to exempt only "regular, ordinary automobile dealers * * *"; it was not intended to cover atypical, hybrid dealers such as those "who handled automobiles and who also handled gasoline, for example * * *." *Id.* at 16693.

The exemption, as ultimately enacted in the 1961 amendments, covered establishments "primarily engaged" in the business

---

1. *See* 106 Cong.Rec. 16691, 16708 (1960). Efforts to enact the FLSA amendments stalled, however, when the Senate and House could not agree on a compromise bill. Congress did pass the amendments in 1961 and the legislation included an exemption for auto dealers. *See* Fair Labor Standards Amendments of 1961, 75 Stat. 65.

of selling automobiles, trucks or farm implements. 75 Stat. 65, 73 (1961). Although "primarily engaged" did not appear in the original exemption proposed in 1960, there is no indication that Congress, by inserting this term, intended to abandon its previously expressed concern that the exemption should have limited effect and apply only to "regular, ordinary dealers." Accordingly, we construe the legislative history as indicating that Congress intended the exemption to be narrowly applied and was not designed to exempt those dealers who engage in the retail sales of automobiles to a limited degree.

The 1966 amendments to the FLSA, which provide the most current version of the exemption here at issue, narrowed even further what Congress intended to be a circumscribed exemption. Prior to 1966, the Act exempted from both the minimum wage and overtime provisions all employees of automobile, truck, and farm implement dealers. The 1966 amendments had an overall limiting effect on the exemption by restricting it to the specific employee categories of "salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, * * * trucks, [or] farm implements * * *." See 80 Stat. 830, 836; *Schultz v. Louisiana Trailer Sales, Inc.,* 428 F.2d 61, 66 (5th Cir.), *cert. denied.,* 400 U.S. 902, 91 S.Ct. 139, 27 L.Ed.2d 139 (1970).

■ We think that in order to determine whether the employer establishment is primarily engaged in the business of selling automobiles, trucks, or farm implements to ultimate purchasers or whether the primary business activities of the establishment are in other lines of endeavor, courts must put retail automobile and truck business on one side of the equation and the other business activities of the establishment on the other side. A company will qualify for the exemption in 29 U.S.C. § 213(b)(10)(A) only if over one-half the establishment's dollar volume of sales is attributable to the retail sales of automobiles, trucks, or farm implements. It makes no difference for the purposes of the exemption whether the non-exempt activities consist of one or more lines of business. This rationale is not only consistent with the exemption's limited purpose, it is also the approach taken by the Secretary, and it seems reasonable.

It cannot be disputed that Bereuter's received more gross income in each year in question from its retail sales of automobiles and trucks than from either the wholesale sale of automobiles, trucks, gasoline and petroleum products or its retail sales such as hardware, tires, batteries and parts. Nevertheless, the combination of gross revenue from the other lines of business exceeded, in each year, the gross revenue from the retail sale of automobiles and trucks.[2]

Accordingly, we hold the Secretary's application of the regulation to Bereuter is valid and determine that Bereuter's does not qualify for the exemption because more than one-half of its gross proceeds do not emanate from the retail sales of automobiles, trucks, or farm implements.

We reverse and remand for further proceedings and the entry of a judgment for the Secretary consistent with this opinion.

ROSS, Circuit Judge, dissenting.

I do not agree with the reasoning of the majority and I would affirm this case on the basis of Judge Urbom's well-reasoned opinion.

---

2. The district court found that Bereuter's retail sales of cars and trucks to ultimate purchasers constituted 47.42% and 39.54% of its total annual dollar volume for the years 1978 and 1979, respectively. Bereuter's other business activity—the retail sale of hardware, tires, etc., the leasing of cars, and the wholesale of cars, trucks, etc.—generated 52.27% of its annual dollar volume for 1978 and 60.45% for 1979. In 1980, Bereuter's retail sales of cars and trucks made up approximately 32% of its total revenues. Some 68% of its 1980 annual dollar volume was generated by its various other business activities.