895 F.2d 1414
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Nancy SAGLIMBENE, Plaintiff-Appellee,
v.
VENTURE INDUSTRIES CORPORATION, Lawrence Winget, and James
Schutz, Defendants-Appellants.
 No. 89-1248.
 United States Court of Appeals, Sixth Circuit.
 Feb. 9, 1990.
 
 Before MILBURN and ALAN E. NORRIS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendants-appellants Venture Industries Corporation, Lawrence Winget, and James Schutz ("Venture") appeal from the judgment for Nancy Saglimbene in this action alleging violation of the equal pay and overtime compensation provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Sec. 201 et seq. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 Venture is an injection-molding facility engaged in the production and sale of plastic parts to the automobile industry. Saglimbene began working at Venture in August 1983 as the purchasing agent at Venture's Plant 4, a manufacturing plant where large parts are molded from raw materials. Saglimbene was paid a weekly salary of $280.00, plus the "straight time" rate of $7.00 per hour for overtime work. Saglimbene's job responsibilities included purchasing raw materials and component parts for assembly, receiving purchase orders, purchasing office supplies, and other clerical and office work. Saglimbene worked in the capacity as a purchasing agent until she voluntarily quit on July 3, 1985.
 
 
 3
 In October 1984, while Saglimbene was still employed at Venture, Peter Buongiorno was hired as a purchasing agent and to help set up Venture's Plant 5, a new paint and assembly plant. Buongiorno's job responsibilities during the setup of Plant 5 included supervising employees in shipping and receiving, assisting in the design of the warehouse, and assisting in the purchase of a conveyor system, hot melt equipment, hi-los, and other noninventory items. Buongiorno was also responsible for purchasing all inventory items for Plant 5. The setup of Plant 5 was completed by January 1985, and Buongiorno continued to work as purchasing agent for Plant 5 until February 1986, when he took a sales position in Venture's nonautomobile division. Buongiorno quit working for Venture in October 1986.
 
 
 4
 Buongiorno's starting salary at Venture was $29,900.00 per year, which converted to a weekly salary of $575.00. Buongiorno was not paid for overtime work. Buongiorno received a pay increase of $1,300.00 per year within his first year of employment. At the time he left Venture, Buongiorno was earning $34,000.00 annually, which converted to a weekly salary of $653.85.
 
 B.
 
 5
 Saglimbene filed the present action on September 5, 1986, in Macomb County Circuit Court, and the action was removed to federal district court on the basis of federal question jurisdiction. Saglimbene's original four-count complaint alleged that Venture (1) discriminated on the basis of sex in violation of Title VII of the Civil Rights Act of 1964 and Michigan's Elliott-Larsen Civil Rights Act, (2) violated the Equal Pay Act by discriminating on the basis of sex, (3) failed to adequately compensate her for overtime in violation of the FLSA, and (4) breached an implied employment contract. Prior to trial, Saglimbene abandoned the Title VII claim and the breach of contract claim, and prior to jury deliberations, the court dismissed the Elliott-Larsen claim, leaving only the equal pay and overtime compensation claims.
 
 
 6
 Saglimbene alleged that Venture violated the Equal Pay Act, 29 U.S.C. Sec. 206(d)(1), by paying her less than it paid Buongiorno, a comparable male employee. Venture responded that the disparity in compensation was based on the fact that Saglimbene and Buongiorno did not perform equal work as defined by the Act. Saglimbene also alleged that Venture violated the FLSA by paying her only "straight time" rather than "time and a half" for overtime hours. Venture responded that it did not pay Saglimbene a "premium" rate for overtime because two investigations of Venture by the United States Department of Labor in 1984 and 1986 determined that employees in her job classification were not entitled to "premium" pay for overtime.
 
 
 7
 Saglimbene's evidence at trial consisted of her testimony, her husband's testimony, Buongiorno's deposition testimony, and testimony by Charles Leibel, an expert in job evaluation and salary administration. On September 28, 1988, following a seven-day trial, the jury returned a verdict in favor of Saglimbene on both claims. The jury awarded Saglimbene $28,025.00 on her equal pay claim, and $1,961.99 on her overtime claim. The court ordered the parties to brief the issue of liquidated damages, and on October 26, 1988, the court awarded Saglimbene $29,986.99 in liquidated damages pursuant to FLSA Sec. 16, 29 U.S.C. Sec. 216(b).
 
 
 8
 Venture moved for reconsideration of the liquidated damages award, and the court denied the motion by order dated January 3, 1989. In the January 3 order, the court also awarded Saglimbene $17,540.00 for attorney's fees and $1,705.05 for costs pursuant to FLSA Sec. 16, 29 U.S.C. Sec. 216(b). Following entry of the judgment, Venture filed a motion for judgment notwithstanding the verdict or a new trial pursuant to Federal Rules of Civil Procedure 50(b) and 59. The court denied Venture's motion on February 7, 1989, and this timely appeal followed.
 
 
 9
 The principal issues on appeal are whether the district court erred by (1) denying Venture's motion for judgment notwithstanding the verdict or a new trial, (2) awarding Saglimbene liquidated damages, (3) admitting expert opinion testimony, (4) excluding an exhibit from evidence, and (5) failing to give a requested jury instruction.
 
 II.
 A.
 
 10
 Venture's motion for judgment notwithstanding the verdict or a new trial challenged only the judgment on the equal pay claim. In deciding the JNOV motion, the district court ignored Venture's evidence and examined only the sufficiency of Saglimbene's evidence, but when ruling on the new trial motion, the court considered the evidence offered by both parties. Venture argues that the district court erred in denying its motion for JNOV by applying the wrong standard and considering only Saglimbene's evidence.
 
 
 11
 The district court did err by considering only Saglimbene's evidence. "A judgment n.o.v. may be granted only if, upon viewing the totality of the admissible evidence most favorably to the party opposing the motion, a reasonable trier of fact could draw but one conclusion." Ridenour v. Lawson Co., 791 F.2d 52, 55 (6th Cir.1986) (emphasis added). However, the district court's failure to apply the proper standard does not require reversal because a trial court's disposition of a motion for JNOV "is a question of law that is freely reviewable on appeal." Chappell v. GTE Prod. Corp., 803 F.2d 261, 265 (6th Cir.1986), cert. denied, 480 U.S. 919 (1987). "Thus, the judgment below can be reversed only if, after viewing all of the evidence and drawing all reasonable inferences in favor of the plaintiff, this court concludes that the evidence 'points so strongly in favor of the movant that reasonable minds could not come to a different conclusion.' " Ridenour, 791 F.2d at 55 (quoting Morelock v. NCR Corp., 586 F.2d 1096, 1104-05 (6th Cir.1978), cert. denied, 441 U.S. 906, (1979)).
 
 
 12
 In reviewing the JNOV motion, it is necessary to consider the applicable law and burden of proof. The Equal Pay Act prohibits employers from discriminating on the basis of sex in the payment of wages to employees who perform equal work requiring equal skill, effort, and responsibility, performed under similar working conditions. 29 U.S.C. Sec. 206(d)(1). To prevail on an equal pay claim, a plaintiff must show that the employer paid different wages to employees of opposite sexes for "equal work," as defined by the Act. Odomes v. Nucare, Inc., 653 F.2d 246, 250 (6th Cir.1981). The phrase "equal work" does not "require that the jobs be identical." Id. Rather, "only substantial equality of skill, effort, responsibility and working conditions is required." Id. In the present case, Saglimbene contends that she and Buongiorno performed equal work, yet she received less compensation. Thus, the relevant inquiry is whether, viewing all the evidence in the light most favorable to Saglimbene, reasonable minds could not conclude that Saglimbene and Buongiorno performed equal work.
 
 
 13
 Venture asserts that the evidence clearly establishes Saglimbene and Buongiorno were not performing equal work. Venture argues that Buongiorno was a management employee whose job involved more responsibility and required greater skill than did Saglimbene's job. Venture asserts that in addition to purchasing inventory for Plant 5, Buongiorno helped set up the plant, negotiated with vendors for the purchase of noninventory equipment, and supervised employees in shipping and receiving. In contrast, Venture contends that Saglimbene was a clerical worker who performed certain purchasing functions.
 
 
 14
 Viewing the evidence and all reasonable inferences in favor of Saglimbene, the evidence is not "so strongly in favor of [Venture] that reasonable minds could not come to a different conclusion." Morelock, 586 F.2d at 1104-05. The evidence reveals that both Saglimbene and Buongiorno were purchasing agents for their respective plants. Plants 4 and 5 were of comparable size, but performed different functions. Saglimbene submitted statistical evidence showing that all purchasing at Venture from January to June 1985 totaled $10.9 million. The evidence showed that Saglimbene purchased $3.5 million (32%), and Buongiorno purchased $1.9 million (17%) during this period. When Buongiorno's deposition was taken for proof, he was asked to identify other purchasing agents. Buongiorno listed Saglimbene and two female purchasing agents at other Venture plants, and testified that he considered Saglimbene and the other female purchasing agents as his "peers."
 
 
 15
 The evidence regarding Buongiorno's additional management responsibilities is inconclusive on the issue of whether Saglimbene and Buongiorno performed equal work. Buongiorno's supervisor at Plant 5, division manager William Gardiner, testified that Buongiorno was the purchasing manager, not just a purchasing agent, and that "[h]e had a greater latitude than the other purchasing personnel at Venture." However, Gardiner's testimony was contradicted by division manger Michael Hendzell. Hendzell testified that while Saglimbene was employed at Venture, purchasing was a decentralized, plant-by-plant function, with purchasing agents performing clerical functions. Hendzell testified that James Schutz, Vice-President of Manufacturing, was the manager of the overall purchasing function. Hendzell also testified that pricing decisions were made by upper level management, and that purchasing agents at the individual plants did not negotiate price or quantity with vendors.
 
 
 16
 With regard to the setup of Plant 5, Venture's witnesses conceded that Buongiorno was just part of a team effort. Gardiner testified that Buongiorno's involvement in purchasing noninventory equipment for Plant 5 consisted of reading literature on the equipment and talking with salesmen from different companies. Neither Buongiorno nor Gardiner had authority to purchase a hi-lo without the approval of James Schutz.
 
 
 17
 With regard to Buongiorno's supervisory responsibilities, Carol Schutz, Plant 5 manager, testified that Buongiorno supervised four people during the setup of Plant 5, which was completed within four months after Buongiorno was hired. Other than this four-month period, Schutz could recall no other time that Buongiorno supervised employees.
 
 
 18
 A jury could find from the evidence presented that Saglimbene and Buongiorno did perform equal work. A jury could reasonably infer that Buongiorno's additional responsibilities during the setup of Plant 5 were incident to his job as purchasing agent for the plant. A jury could conclude that Buongiorno's additional responsibility ceased with the completion of Plant 5 in January 1985, and thereafter Saglimbene and Buongiorno performed equal work as purchasing agents for different plants. In sum, the evidence is not so strongly in favor of Venture that reasonable minds could not conclude that Saglimbene and Buongiorno performed equal work. Morelock, 586 F.2d at 1104-05.
 
 
 19
 Venture also contends the district court erred by denying its motion for a new trial. When ruling on a motion for a new trial, the district court compares the opposing proofs and weighs the evidence, and it will grant a new trial if the verdict is against the clear weight of the evidence. TCP Indus., Inc. v. Uniroyal, Inc., 661 F.2d 542, 546 (6th Cir.1981) (quoting Duncan v. Duncan, 377 F.2d 49, 52-53 (6th Cir.), cert. denied, 389 U.S. 913 (1967)). However, "the jury's verdict should be accepted if it is one which could reasonably have been reached." Id. The district court's denial of a motion for new trial will be reversed only upon an abuse of discretion. Id. Based on the evidence in this case, we conclude that the district court did not abuse its discretion by denying Venture's motion for a new trial.
 
 B.
 
 20
 Following the jury verdict for Saglimbene, the district court awarded liquidated damages totaling $29,986.99 for Venture's violations of the equal pay and overtime provisions of the FLSA. FLSA Sec. 16 provides that an employer who violates the FLSA "shall be liable to the employee ... affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, ... and in an additional equal amount as liquidated damages." 29 U.S.C. Sec. 216(b). However, an employer may escape liability for liquidated damages by showing "to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA. Portal to Portal Act, 29 U.S.C. Sec. 260.
 
 
 21
 Venture argues that the district court erred by awarding liquidated damages. With regard to the equal pay claim, Venture contends that the district court erred by requiring it to show reliance on either state law or an administrative ruling in order to satisfy the reasonable grounds requirement of section 260. With regard to the claim for overtime pay, Venture asserts that its reliance on a Department of Labor determination that Saglimbene's job classification was exempt from overtime requirements is evidence of good faith and reasonable grounds for its action. In sum, Venture argues that the evidence produced at the trial establishes that it acted in good faith and on reasonable grounds.
 
 
 22
 Whether to relieve an employer from liability for liquidated damages is a matter committed to the sound discretion of the district court, and its decision will be reversed only for an abuse of discretion. Pezzillo v. General Tel. & Elec. Info. Sys., 572 F.2d 1189, 1190 (6th Cir.1978) (per curiam). The district court exercises discretion at two points. For the court's discretion to be invoked in the first place, the "employer must sustain a 'plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.' " McClanahan v. Mathews, 440 F.2d 320, 322 (6th Cir.1971) (quoting Rothman v. Publicker Indus., Inc., 201 F.2d 618, 620 (3d Cir.1953)). However, even where the employer satisfies the burden of showing good faith and reasonable grounds, "the District Court nevertheless may award full liquidated damages equal to, and in addition to, the unpaid back wages." Id. at 323.
 
 
 23
 Venture submitted no additional evidence of good faith or reasonableness other than the evidence presented at the trial. The district court concluded that the evidence was insufficient to escape liability for liquidated damages, and the court acted "within its discretion to award full liquidated damages." Martinez v. Food City, Inc., 658 F.2d 369, 376 (5th Cir. Unit A Oct. 1981). Moreover, even if the evidence did support a finding of good faith and reasonableness, the district court retained discretion to award liquidated damages, and the court did not abuse its discretion by doing so in this case.
 
 C.
 
 24
 In support of both her equal pay and overtime compensation claims, Saglimbene called Charles Leibel as an expert witness in the field of job evaluation and salary administration. Leibel was called to testify in behalf of Saglimbene as an expert on ranking and comparing jobs pursuant to a point-factor system, and deciding whether jobs are exempt or nonexempt from FLSA overtime requirements. In an oral motion made just prior to Leibel's testimony, Venture objected to qualifying Leibel as an expert and also challenged the substance of Leibel's testimony. The district court denied Venture's motion, recognized Leibel as an expert pursuant to Federal Rule of Evidence 702, and allowed him to testify.
 
 
 25
 Venture first argues that Leibel's testimony was inadmissible under Federal Rule of Evidence 702 because expert testimony was unnecessary in this case. "The decision to allow a witness to testify as an expert is largely within the discretion of the trial court and will not be disturbed on appeal unless clearly erroneous or an abuse of discretion." Davis v. Combustion Engineering, Inc., 742 F.2d 916, 919 (6th Cir.1984). We have held that "Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." Id. In the present case, the district court concluded that Leibel's testimony would assist the trier of fact, and the court permitted Leibel to testify as an expert pursuant to Rule 702. Given the broad standards of Rule 702, the district court's decision is not clearly erroneous or an abuse of discretion. Davis, 742 F.2d at 919.
 
 
 26
 Venture next challenges the substance of Leibel's testimony, arguing that he was allowed to draw legal conclusions with regard to two issues: (1) whether Saglimbene's job was equal to Buongiorno's job, and (2) whether Saglimbene was a nonexempt employee entitled to premium overtime pay. Leibel's expert opinion as to these two issues was elicited on direct examination as follows:
 
 
 27
 Q. As a salary administrator with 15 years of experience, would you pay these two jobs for these two individuals roughly the same or would you pay one more or one less?
 
 
 28
 A. As it stands right now, I would be paying them the same.
 
 
 29
 Q. Now, as you understand the job of Mrs. Saglimbene and from everything you've reviewed and from Mr. Buongiorno's deposition, would you classify this job in overtime terms as being one that would require overtime or not require overtime at time and a half rate?
 
 
 30
 * * *
 
 
 31
 * * *
 
 
 32
 A. I would say this would require--overtime would be required at the rate of time and a half.
 
 
 33
 Transcript Vol. II, pp. 70-71. Venture did not object when these questions were asked of Leibel, but the specific grounds of Venture's objection were stated in the motion made just prior to Leibel's testimony.
 
 
 34
 "A party may not assert as error the introduction of evidence unless a timely objection is made." Helminski v. Ayerst Labs., 766 F.2d 208, 211 (6th Cir.), cert. denied, 474 U.S. 981 (1985); Fed.R.Evid. 103(a)(1). In Collins v. Wayne Corp., 621 F.2d 777, 784 (5th Cir.1980), the court held that "a party whose motion in limine has been overruled must object when the error he sought to prevent with his motion is about to occur at trial." In Collins, plaintiffs had filed a motion in limine to prevent defendant from cross-examining expert witnesses about fees they charged in prior litigation. Id. at 783. The district court denied the plaintiffs' motion, and when defendant inquired about prior fees on cross-examination, plaintiffs' counsel failed to object. Id. The court held that plaintiffs failed to preserve error for appellate review by not objecting to the cross-examination about prior fees. Id. at 784. But see Sherrod v. Berry, 827 F.2d 195, 203 (7th Cir.1987) (motion in limine is sufficient to preserve point for review without renewing objection at time of the testimony), vacated on other grounds, 835 F.2d 1222 (7th Cir.1988); Sheehy v. Southern Pac. Transp. Co., 631 F.2d 649, 652-53 (9th Cir.1980) (objection during pretrial argument adequate to preserve error for appeal).
 
 
 35
 Venture's motion to exclude the expert's testimony, made just prior to his testifying, is analogous to a motion in limine, and since this motion was denied, Venture had to object to the questions regarding equal work and overtime compensation when asked of the expert in order to preserve error for appellate review. "A court may, however, review the introduction of evidence in the absence of an objection if it constitutes plain error and affects a party's substantial rights." Finch v. Monumental Life Ins. Co., 820 F.2d 1426, 1432 (6th Cir.1987). Our power to review "under the plain error doctrine is discretionary and 'should be exercised only in those situations in which the failure to do so would result in a manifest miscarriage of justice.' " Id. (quoting United States v. Grosso, 358 F.2d 154, 158 (3d Cir.1966), rev'd on other grounds, 390 U.S. 62 (1968)). Because admission of the expert's testimony regarding equal work and overtime compensation does not result in a manifest miscarriage of justice, we find no plain error. Accordingly, we are precluded from considering Venture's challenge to the substance of Leibel's testimony since no timely objection was made.
 
 D.
 
 36
 Venture next argues that the district court erred by excluding from evidence an exhibit related to the Department of Labor's 1986 investigation of Venture. As noted earlier, the Department of Labor conducted two investigations at Venture to determine whether Venture was complying with the overtime compensation requirements of the FLSA. The first investigation was in 1984, and the second investigation occurred in 1986 and covered the period of time during which Saglimbene was employed at Venture. At the trial, Michael Torakis, Chief Financial Officer at Venture, testified about the 1986 investigation.
 
 
 37
 During Torakis' testimony, Venture attempted to introduce into evidence a five-page exhibit relating to the 1986 investigation. The first page was a copy of a letter sent by Torakis to the Department of Labor on June 30, 1986, which outlined the results of the Department's investigation, and explained Venture's understanding of its requirement to pay overtime at the rate of time and a half to certain unnamed employees. The next three pages of the exhibit were a Venture internal memorandum, dated February 4, 1987, discussing in greater detail the results of the 1986 investigation. These three pages listed job categories and employees who were entitled to premium overtime compensation, and Saglimbene's name and job category were not included in the list. However, Saglimbene quit working at Venture on July 3, 1985. The last page of the exhibit was a March 18, 1987, letter from Torakis to the Department of Labor which accompanied copies of payroll checks showing compliance with the Department of Labor's determination that nine employees were entitled to premium overtime compensation.
 
 
 38
 The district court expressed concern about the relevancy of the proposed five-page exhibit, and Venture argued it was admissible as a business record pursuant to Federal Rule of Evidence 803(6). The court admitted the first page of the proposed exhibit, but excluded the other pages as irrelevant. Venture argues the district court committed reversible error by excluding from evidence the four pages of records related to the 1986 investigation.
 
 
 39
 A "district court's ruling on evidentiary matters will be reversed only on a clear showing of abuse of discretion." Apponi v. Sunshine Biscuits, Inc., 809 F.2d 1210, 1218 (6th Cir.), cert. denied, 484 U.S. 820 (1987). We have also held that "no error in the admission or exclusion of evidence is ground for reversal or granting a new trial unless refusal to take such action appears to the court to be inconsistent with substantial justice." TCP Indus., Inc. v. Uniroyal, Inc., 661 F.2d 542, 550 (6th Cir.1981). In McGowan v. Cooper Indus., Inc., 863 F.2d 1266, 1271 (6th Cir.1988), we observed:
 
 
 40
 A trial court is accorded wide discretion in determining the admissibility of evidence challenged as irrelevant, and it is a discretion which is not disturbed on appeal if the reviewing court is able to say that the ruling excluding the evidence, even if erroneous, did not result in a substantial injustice....
 
 
 41
 Id.
 
 
 42
 Venture has not shown that the district court clearly abused its discretion by excluding the proposed exhibit from evidence. Moreover, even if the district court did err by excluding the evidence, the error "did not result in a substantial injustice." McGowan, 863 F.2d at 1271. The facts Venture sought to establish through admission of the exhibit were conveyed to the jury by Torakis' testimony regarding the 1986 investigation. Thus, the district court's exclusion of the documents did not result in substantial injustice, and, consequently, there is no ground for reversal or for granting a new trial. TCP Indus., 661 F.2d at 550.
 
 E.
 
 43
 Finally, Venture argues the district court committed reversible error by refusing to include in its charge to the jury the following instruction:
 
 
 44
 In 1984 and 1987 [sic], the United States Department of Labor determined that employees in plaintiff's job classification were not entitled to the overtime compensation claimed by plaintiff. This determination is entitled to considerable weight, and must be considered as persuasive evidence support of defendants' position.
 
 
 45
 Defendants' Supplemental Proposed Jury Instruction No. 3. Venture argues the "proposed instruction ... was an objective and accurate statement of the state of the law in this and other circuits with respect to the weight that should be accorded to Department of Labor determinations regarding interpretation of its own regulations." Appellant's Brief at 47. See Donovan v. KFC Nat'l Management Co., 682 F.2d 603 (6th Cir.1982); Donovan v. Bereuter's, Inc., 704 F.2d 1034, 1036 (8th Cir.1983).
 
 
 46
 "To effectively charge a trial court with failure to provide an instruction, one must first show the presence of evidence in the record sufficient to support submission of that instruction. Absent such evidence, nothing is present upon which the court could have based the refused instructions." Bucyrus-Erie Co. v. General Prod. Corp., 643 F.2d 413, 420 (6th Cir.1981). In the present case, Venture has failed to show sufficient record evidence to support submission of the requested instruction. The only evidence regarding the Department of Labor's investigations was a letter from Venture acknowledging its obligation to pay overtime compensation to certain unnamed employees and Torakis' testimony about the action taken by Venture following the 1986 investigation. There was no evidence in the record that the Department of Labor determined that employees in Saglimbene's job classification were not entitled to overtime compensation. Given the absence of evidence on this issue, the court did not err by refusing to give the requested instruction. Bucyrus-Erie, 643 F.2d at 420.
 
 
 47
 Moreover, "[r]egardless [sic] whether a proposed instruction correctly states a legal abstraction, when the instruction is not applicable to the facts, it is properly denied." Hobson v. Wilson, 737 F.2d 1, 41 (D.C.Cir.1984), cert. denied, 470 U.S. 1084 (1985). In the cases cited by Venture to support the proposed instruction, deference was given to the Secretary of Labor's interpretation of the FLSA, not to the results of a Department of Labor investigation. Thus, while Venture's proposed instruction may correctly state the law regarding deference to the Secretary's interpretation of the FLSA, it is not applicable to the facts of this case. Hobson, 737 F.2d at 41.
 
 F.
 
 48
 At the conclusion of her brief, Saglimbene asks this court to "declare the entire appeal to be frivolous and award double attorney fees and double costs: the first award of attorney fees should be considered a sanction and the second award as permitted under the FLSA for the prevailing party." Appellee's Brief at 51. Federal Rule of Appellate Procedure 38 authorizes the award of just damages and single or double costs to an appellee if an appeal is determined to be frivolous. We have held that an appeal is frivolous "if it is obviously without merit and is prosecuted for delay, harassment, or other improper purposes." Dallo v. INS, 765 F.2d 581, 589 (6th Cir.1985). Because this appeal is not "obviously without merit," we decline to impose sanctions or award costs pursuant to Rule 38.
 
 
 49
 In addition to any judgment awarded to a plaintiff under the FLSA, 29 U.S.C. Sec. 216(b) directs the court to "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." In this case, the district court awarded attorney fees and costs to Saglimbene pursuant to 29 U.S.C. Sec. 216(b). Although section 216(b) does not expressly provide for the award of attorney's fees and costs on appeal, some circuits have held that "[a]n additional fee to compensate counsel for their services in connection with the appeal can be awarded in a Fair Labor Standards Act case when the appellate court considers such an award appropriate." Montalvo v. Tower Life Bldg., 426 F.2d 1135, 1150 (5th Cir.1970). In Montalvo, the court concluded that an additional fee for the appeal was warranted because "mastery of the issues raised by the defendants obviously required considerable study and research on the part of plaintiff's attorneys." Id. Because the issues raised in this appeal are not particularly complex, we do not believe that an award of costs or attorney's fees is appropriate in this case.
 
 III.
 
 50
 Accordingly, the judgment in this case is AFFIRMED.